757 A.2d 849 (2000)
In re M.L., Born 2/6/95.
Appeal of K.L., Natural Mother.
Supreme Court of Pennsylvania.
Argued September 15, 1999.
Decided August 22, 2000.
Louis J. Kober II, Greensburg, for K.L., Natural Mother.
Timothy J. Sloan, Edensburg, for Child Advocate.
John Kuzmiak, for CYS.
David C. Klementick, for R.G. (Father).
Before FLAHERTY, C.J., and ZAPPALA, CAPPY, CASTILLE, NIGRO, NEWMAN, and SAYLOR, JJ.
CASTILLE, Justice.
Allowance of appeal was granted in this matter limited to the issue of whether a court may properly adjudge a child to be dependent where the non-custodial parent is ready, willing and able to provide the child with proper parental care and control. The Superior Court affirmed the trial court's finding of dependency in the instant case even though the child's father was available and willing to provide adequate care for the child. We hold that a child, whose non-custodial parent is ready, willing and able to provide adequate care to the child, cannot be found dependent and, therefore, reverse.
Appellant is the natural mother of the child, born February 6, 1995, and R.G. is the child's natural father. The child's parents never married but shared custody of the child from the time of her birth. A *850 January 1997 custody dispute ended with appellant having primary physical custody and the father having partial custody every other weekend. In May of 1996, appellant contacted Cambria County Children and Youth Service (CYS) to complain that the father did not care for the child properly during her weekends with him in that he lacked supplies for the child and did not feed her appropriately.
Then, in August of 1996, appellant began alleging that the father was sexually abusing the child. Between August 1996 and January 1997, appellant subjected the child to six separate physical examinations for possible sexual abuse at either the hospital emergency room or the child's pediatrician's office. Each examining physician reported that the child had diaper rash or normal redness for a child of her age wearing diapers; no signs of sexual abuse were found in any of the examinations. Despite the lack of evidence, appellant continued to allege that the father was sexually abusing the child, leading CYS to file a petition for dependency. Following two evidentiary hearings on February 24 and March 19, 1997, the trial court found, on March 25, 1997, that the child was a dependent child and awarded custody to her father.[1]
The sole issue for our determination is whether the trial court erred in finding that the child was a dependent child when her father was ready, willing and able to provide adequate care to her. Two earlier panels of the Superior Court reached conflicting decisions as to whether a child can be found dependent and then placed in the custody of the non-custodial parent. In In the Interest of Justin S., 375 Pa.Super. 88, 543 A.2d 1192 (1988), a panel of the Superior Court held that a trial court cannot adjudge a child dependent where the non-custodial parent is ready, willing and able to provide proper care; while in In re Barclay, 321 Pa.Super. 417, 468 A.2d 778 (1983), a second panel affirmed a finding of dependency with placement of the child with the non-custodial parent. This Court must resolve this conflict between the two Superior Court decisions.
A dependent child is defined in pertinent part at 42 Pa.C.S. § 6302 as:
A child who:
(1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental or emotional health, or morals;[2]
(2) has been placed for care or adoption in violation of law;
(3) has been abandoned by his parents, guardian, or other custodian;
(4) is without parent, guardian, or legal custodian;

* * * *
A court is empowered by 42 Pa.C.S. § 6341(a) and (c) to make a finding that a child is dependent if the child meets the statutory definition by clear and convincing evidence. If the court finds that the child is dependent, then the court may make an appropriate disposition of the child to protect the child's physical, mental *851 and moral welfare, including allowing the child to remain with the parents subject to supervision, transferring temporary legal custody to a relative or a private or public agency, or transferring custody to the juvenile court of another state. 42 Pa.C.S. § 6351(a).
The definition of a dependent child contained in section 6302 clearly states that a child must lack a parent, guardian or other legal custodian who can provide appropriate care to the child. A child whose non-custodial parent is ready, willing and able to provide such care does not meet this definition. In Justin S., 375 Pa.Super. at 104, 543 A.2d at 1200, the Superior Court stated:
[I]t is the duty of the trial court to determine whether the non-custodial parent is capable and willing to render proper parental control prior to adjudicating a child dependent. If the court determines that the custodial parent is unable to provide proper parental care and control "at this moment" and that the non-custodial parent is "immediately available" to provide such care, the child is not dependent under the provisions of the Juvenile Act. Consequently, the court must grant custody of the allegedly dependent child to the non-custodial parent. Once custody is granted to the non-custodial parent, "the care, protection, and wholesome mental and physical development of the child" can occur in a family environment as the purpose of the Juvenile Act directs. 42 Pa.C.S. § 6301(b).
We are in accord with the Superior Court's decision in Justin S. The plain language of the statutory definition of a dependent child compels the conclusion that a child is not dependent if the child has a parent who is willing and able to provide proper care to the child. When a court adjudges a child dependent, that court then possesses the authority to place the child in the custody of a relative or a public or private agency. Where a non-custodial parent is available and willing to provide care to the child, such power in the hands of the court is an unwarranted intrusion into the family. Only where a child is truly lacking a parent, guardian or legal custodian who can provide adequate care should we allow our courts to exercise such authority. Accordingly, we hold that where a non-custodial parent is ready, willing and able to provide adequate care to a child, a court may not adjudge that child dependent.
In the instant case, there is no dispute that the child's father was available, capable and willing to provide care to the child. Therefore, she does not meet the statutory definition of a dependent child, and the trial court erred in adjudging her dependent. Therefore, the decision of the Superior Court affirming the trial court's finding that the child is a dependent child is reversed.[3]
*852 Justice NEWMAN files a concurring opinion joined by Justice ZAPPALA, who also joins the majority opinion.
Justice CAPPY files a dissenting opinion in which Justice SAYLOR joins.
Justice NEWMAN, concurring.
I join the majority's opinion and agree with its conclusion that a child is not dependent if a non-custodial parent is ready, willing and able to provide adequate parental care. I write separately to note that this holding does not restrict either the non-custodial parent or the State from responding to allegations of child abuse because both the Protection from Abuse Act[1] and the Child Protective Services Law (CPSL)[2] provide a mechanism to respond.
The Protection from Abuse Act, relevant to the facts as existed here, allows a non-custodial parent to file a petition in court alleging abuse by the custodial parent. 23 Pa.C.S.A. § 6106(a).[3] Within ten days, the court must hold a hearing, or if the matter involves "immediate and present danger of abuse" to the child or children, the court "shall conduct an ex parte proceeding." 23 Pa.C.S.A. § 6107. If the non-custodial parent proves by a preponderance of the evidence that the custodial parent has abused the child, the court can fashion an appropriate order to implement custodial and support issues, which could include, but do not necessarily require, transfer of temporary custody or supervised visitation. E.g., 23 Pa.C.S.A. § 6108(a)(4).[4] The permanent custody issues between parents then could continue through Chapter 53 of Title 23.
The CPSL provides the mechanism for state involvement in a family unit where child abuse is alleged. I agree with the Dissent's discussion that the purpose of the CPSL is to promote swift investigation of suspected child abuse, and provide protective services for children and rehabilitative services for their parents in order to ensure the well-being of the child and to preserve and stabilize family life wherever appropriate. 23 P.S. § 6302(b). However, that does not mean that the State may declare a child dependent because of alleged abuse if a non-custodial parent is involved in the child's life, and is in no way connected with the alleged abuse, and has not evidenced a lack of parental control or care.
The determination that a child can not be declared "dependent" if a non-custodial parent is ready, willing and able to assume parental care and control does not restrict the State from addressing the abuse because it can act through the CPSL without declaring the child dependent. The CPSL mandates that certain classes of people must report suspicions of child abuse. 23 Pa.C.S.A. § 6311. When a report of abuse is made, a county agency is directed to investigate. 23 Pa.C.S.A. §§ 6334-6338, 6368. If a child is in imminent risk of harm because of abuse, the *853 county agency may seek a judicial order to take the child into protective custody, such as temporary foster care or other "shelter" care, pursuant to 23 Pa.C.S.A. § 6315, 23 Pa.C.S.A. § 6369.[5] While Section 6315 states that a child may be taken into protective custody as provided for in 42 Pa. C.S.A. § 6324, a child does not have to be declared "dependent" before removal is authorized. 23 Pa.C.S.A. § 6315(d); 42 Pa.C.S.A. 6324(c). Moreover, pursuant to Section 6315(d) of the CPSL, the child is not declared "dependent" before the court conducts an informal hearing regarding the appropriateness of the protective custody within twenty-four hours of assuming custody. See 23 Pa.C.S.A. § 6315(b),(c) and (d) and 42 Pa.C.S.A. § 6332. The CPSL at Section 6315 does allow the county agency to initiate dependency proceedings, but it does so only after the county agency has notified the parents of the child's whereabouts and only if a dependency hearing is "appropriate." 23 Pa. C.S.A. § 6315(c), (d). It seems to me that if, at the informal hearing, a non-custodial parent were "ready, willing and able" to assume care of the child and the non-custodial parent was not implicated in the abuse, a dependency hearing would not be "appropriate." Moreover, if a non-custodial parent did not come forward at the informal hearing to assume custody or the non-custodial parent's involvement in the abuse was unclear, then no "ready, willing and able" parent exists and the child would be therefore "dependent."
Further, in situations where the county agency does not have reason to believe that a child is in imminent risk of harm, but is concerned that abuse might continue, the agency can implement appropriate social services for the child and family. 23 Pa.C.S.A. § 6370(a). In cases where the child's parents do not live together, social services should be offered to the family, including custodial and non-custodial parents, to address the abuse of the child. If either parent refuses these social services, then the county agency may initiate "the appropriate court proceeding" pursuant to Section 6370(b). Thus, in some circumstances, even though a child has both a custodial and non-custodial parent willing to assume care for the child, neither parent is willing to accept social services in order to exercise proper parental care and control, and thereby prevent the abuse and, again, the child would be declared "dependent." It could also be that after social services are offered, they do not achieve their goal and protective services are required to avoid continued abuse and neglect. In these circumstances, the county agency of course could file a petition in accordance with 23 Pa.C.S.A. § 6315 or § 6370(b), as discussed above. However, that was not the case here.
The record indicates that Mother and Father were involved in custody proceedings that began in the summer of 1996. The county agency conducted home study evaluations of the parties and submitted these to the family court judge. (R. 30a). In the fall of 1996, during the pendency of this custody matter, Mother filed reports regarding harassment and child abuse by Father. The county agency conducted an investigation and had Mother, Father and child evaluated by a psychiatrist in November of 1996. Mother was in counseling during this time, but continued to make increasingly more outrageous claims of abuse against Father, which could not be substantiated. On January 17, 1997, the family court held another custody hearing and, even following the evaluations of November 1997, the court continued custody with the Mother, and visitation with Father. (R. 32a). The County Agency then on February 5, 1997, filed a petition pursuant to 42 Pa.C.S.A. § 6302 on the basis that the child was "dependent," not that *854 protective services were required pursuant to 23 Pa.C.S.A. § 6315.
This is where the county agency exceeded its authority. If some event of abuse occurred between the time of the court's custody hearing on January 17, 1997 and February 5, 1997, which caused the county agency to fear that the child was in imminent risk of harm, then the appropriate course of action was to file a petition for protective services as discussed above.[6] At that time, the child would be temporarily placed in appropriate "shelter" care and an immediate informal hearing could take place where the court could place the child with Father or in another protective placement, as appropriate. Father could also then petition to modify the custody order in the ongoing dispute, before the family court judge who was already adjudicating and overseeing the matter.[7] Indeed, it appears from the record, that Father did exactly that on or about February 10, 1997. (R. 33a). Thus, it was the decision of the family court judge, through the modification petition, to determine issues of custody and what custody arrangement was in the best interests of the child. Accordingly, it was inappropriate for the county agency to turn this matter into a dependency matter before the juvenile court.
Justice ZAPPALA joins this Concurring Opinion.
Justice CAPPY, dissenting.
I respectfully dissent. I agree with the majority's ultimate result that the child should remain with her non-custodial parent; however, I believe that the majority has fundamentally misapprehended the nature of dependency proceedings and, in reversing the decision of the Superior Court, has violated both the clear language and the intent of the Juvenile Act, 42 Pa.C.S. § 6301 et seq.
Initially, this case involved a private custody action between M.L.'s mother, who had primary physical custody of M.L., and M.L.'s father, who sought more liberal visitation rights with his daughter. Cambria County Children and Youth Services (CYS) only became involved after M.L.'s mother raised numerous allegations charging the father with sexually abusing M.L. Upon further investigation, CYS determined that M.L.'s father was not abusing his daughter. To the contrary, CYS became concerned that the child was in danger of being emotionally harmed by her mother's obsessive behavior. CYS then initiated dependency proceedings to intervene and protect the child from any further mistreatment.[1] The court adjudicated the child to be dependent, and transferred custody to her father, the non-custodial parent.[2] We granted allocatur to resolve whether a court may adjudge a child to be dependent when a non-custodial parent is ready, willing and able to *855 provide the child with proper parental care and control.[3]
In a dependency proceeding, a child protective services agency seeks court intervention to obtain a disposition that is consistent with the child's best interests. A dependency proceeding primarily involves two issues: (1) whether the agency can establish that the child is dependent under the existing custody arrangement, 42 Pa. C.S. § 6341(a), and if such a finding is made, then (2) which disposition is "best suited to the protection and physical, mental, and moral welfare of the child." 42 Pa.C.S. § 6351(a).
The fundamental flaw in the majority's approach is that it authorizes an automatic transfer of custody to the non-custodial parent without requiring a finding of dependency. In so doing, the majority ignores the purpose of a dependency finding and perpetuates the same procedural error committed by the Superior Court in In re: Justin S., 375 Pa.Super. 88, 543 A.2d 1192 (1988), wherein the Superior Court stated:
If the court determines that the custodial parent is unable to provide proper parental care and control "at this moment" and that the non-custodial parent is "immediately available" to provide such care, the child is not dependent under the provisions of the Juvenile Act. Consequently, the court must grant custody of the allegedly dependent child to the non-custodial parent.
Id. at 1200.
As Judge Tamilia accurately observed in his dissent in Justin S., "[n]owhere in the Juvenile Act is there authority in the court to act without a finding of dependency." 543 A.2d at 1201 (Tamilia, J., dissenting). The Juvenile Act clearly provides that "[i]f the court finds that the child is not a dependent child or that the allegations of delinquency have not been established it shall dismiss the petition...." 42 Pa. C.S. § 6341(a) (emphasis added); see In re Davis, 502 Pa. 110, 465 A.2d 614, 619 (1983) (opinion announcing the judgment of the court) (lower court had no authority to enter a disposition under section 6351 of the Juvenile Act if the child was not "dependent"). Thus, it is only after a court makes a finding of dependency that it possesses the ability to evaluate whether a transfer of custody to the non-custodial parent is in the best interests of the child, and if so, to interfere in the present custodial arrangement by transferring custody to that parent. The majority opinion fails to recognize this limitation on the court's authority to act.[4]
*856 In addition to ignoring the statutory restrictions on the court's jurisdiction, the majority's resolution is problematic for two other reasons. First, the majority opinion muddles the statutory definitions of dependency, and thereby unnecessarily circumscribes the definition of a "dependent" child. Second, by requiring an automatic transfer of custody to the non-custodial parent, the majority improperly limits the statutory authority of the court and eliminates options which may be in the best interests of the child.
Initially, I believe that the majority has misinterpreted the provisions of 42 Pa.C.S. § 6302, which defines "dependent child". From the several definitions set forth in this section, the majority distills the following result: "a child must lack a parent, guardian or other custodian who can provide appropriate care to the child." Opin. at 851. The majority's definition is not one of those enumerated in section 6302. The definitions in 42 Pa.C.S. § 6302 are set forth in the disjunctive.[5] Each definition provides a separate and independent basis for determining whether a child may be deemed to be "dependent." Therefore, a child may be deemed to be dependent if she is either "without a parent...." (42 Pa.C.S. § 6302(4)) or "without proper parental care or control...." 42 Pa.C.S. § 6302(1). However, the majority has improperly combined these definitions into a single statement which presupposes the result the majority seeks to reach. I cannot agree with this analysis, as I do not believe that the legislature would expend the effort to set forth nine different definitions, only to have them be commingled by the courts. In my view, when the custodial parent who is primarily responsible for the child's safety and well-being fails to provide proper parental care or control, the child may be deemed to be a "dependent child" pursuant to 42 Pa.C.S. § 6302(1), regardless of whether the child's non-custodial parent is ready, willing and able to care for the child.[6]
The second problem that I discern in the majority opinion is its requirement of an automatic transfer of custody to the non-custodial parent. Under the Juvenile Act, if the court finds clear and convincing evidence that the child is dependent under the existing custody arrangement, the court shall "make a proper disposition of the case". 42 Pa.C.S. § 6341(c). The *857 court may make any order of disposition that is "best suited to the protection and physical, mental, and moral welfare of the child." 42 Pa.C.S. § 6351(a). The Act provides the court with several options, including, but not limited to, the following: the court may "[p]ermit the child to remain with his parents, guardian, or other custodian, subject to conditions and limitations as the court prescribes, including supervision as directed by the court for the protection of the child", 42 Pa.C.S. § 6351(a)(1); the court might transfer temporary legal custody, subject to conditions and limitations as the court prescribes, to any individual resident within the Commonwealth, "including any relative, who, after study ... is found by the court to be qualified to receive and care for the child", 42 Pa.C.S. § 6351(a)(2)(i); or the court may transfer permanent legal custody, subject to conditions and limitations as the court prescribes, to an individual resident within the Commonwealth, "including any relative, who after study... is found by the court to be qualified to receive and care for the child." 42 Pa.C.S. § 6351(a)(2.1). The latter section also permits the court to set forth temporary visitation rights of the parents. Id.
Despite these several options, the majority requires the juvenile court judge, without any consideration of whether such a transfer is consistent with the best interests of the child, to implement only one: transfer the child to the non-custodial parent. This mechanical approach precludes a judge from keeping the child with her custodial parent, subject to monitoring by CYS.[7]See 42 Pa.C.S. § 6351(a)(1). The judge is also denied the option of transferring the child to the father, subject to protective services to assist the child and father in adjusting to the transfer of custody and for monitoring visitation with the mother. See 42 Pa.C.S. § 6351(a)(2)(i), (2.1). Custody courts do not have at their disposition the investigative resources of CYS. Nor can a court require that a parent accept child protective services and supervision without a finding of dependency. The juvenile court judge should be entrusted with the discretion to fashion a remedy that is least disruptive to the child and which considers the child's best interests.[8]
*858 The purpose of the Child Protective Services Law (CPSL), 23 Pa.C.S. § 6301 et seq. is to promote swift investigation of suspected child abuse, and provide protective services for children and rehabilitative services for their parents in order to ensure the well-being of the child and to preserve and stabilize family life wherever appropriate. 23 Pa.C.S. § 6302(b). The Juvenile Act seeks to promote similar goals. See 42 Pa.C.S. § 6301(b) (provisions of chapter should be construed, inter alia, "[t]o preserve the unity of the family whenever possible" and "[t]o provide for the care, protection, safety and wholesome mental and physical development of children....").
In the instant case, M.L. was in imminent risk of harm from her mother, who caused M.L. to undergo several unnecessary physical examinations. Pursuant to its obligations under the CPSL and the Juvenile Act, CYS intervened to prevent further harm to the child. The trial court gave proper deference to the goals of the CPSL and the Juvenile Act, and rendered an appropriate order within its authority under the Juvenile Act:
To stay true to the mandates of the Juvenile Act, the Child Protective Services Law, and society, which maintain that it is necessary to preserve the integrity of the family and only interfere in the family unit when the welfare of the child is at stake, this Court placed the child with her natural father. Further, by this disposition, [M.L.], her mother and her father may receive the rehabilitative services and supervision now available to them.
Tr. Ct. Opin. at 16. Under the majority opinion, this option would have been foreclosed to the court.
I believe that the majority's concern about a court's unwarranted intrusion into the family is tempered by the Commonwealth's obligation to protect endangered children, and is alleviated by the statutory mandate to preserve the integrity of the family and promote the best interests of the child. If, as determined by the trial court, the non-custodial parent is ready, willing and able to provide proper parental care and support, and placement with that parent is in the best interests of the child, the court should place the child with that parent, consistent with the goal of preserving the family unit, as was done in this case.
I also recognize that a dependency hearing should not be used as a vehicle by a malcontent parent to obtain a transfer of custody from the custodial parent. However, that danger is not present in this case, since the dependency proceedings were initiated by CYS, which realized the danger that M.L. posed to her child.
The trial court's finding of dependency and placement of M.L. with her father allows for the implementation of rehabilitative services which can prevent permanent damage to M.L., while protecting the integrity of her family. Without a finding of dependency, the court is powerless to act. Accordingly, I would affirm the Superior Court's holding that the trial court acted properly in adjudicating the child dependent and transferring custody to the father, subject to the supervision of CYS.
Justice SAYLOR joins this Dissenting Opinion.
NOTES
[1] The trial court's decision was based upon a finding that appellant suffers from factitious disorder by proxy, that she had repeatedly subjected the child to physical examinations which revealed nothing more than diaper rash, and that appellant's mental illness had the strong potential to escalate to the point where appellant would actually harm the child physically in order to provide substantiation of her abuse allegations against the child's father. Factitious disorder by proxy means, in this case, that appellant transferred to the child her own psychological difficulties such that she claimed that the child was experiencing symptoms of abuse that the child did not actually experience.
[2] The quoted language comes from the version of 42 Pa.C.S. § 6302 in effect at the time of the entry of the trial court's 1997 order finding the child dependent. In 1998, a second sentence was added to subsection (1) of the definition of a delinquent child. The added language is irrelevant to the issue before this Court and is therefore not included.
[3] In his dissent, Justice Cappy states his belief that, absent a finding of dependency, the trial court lacks the authority to transfer custody of the child to the father in this case. We disagree. Judges in custody matters have broad powers to fashion remedies to meet the best interests of the children involved. For example, a custody judge may modify any existing custody order to a shared custody order sua sponte (23 Pa.C.S. § 5304) or may decline to enter a custody order as agreed to by the parents (23 Pa.C.S. § 5307). As a general rule, a judge making a custody determination must consider a number of factors, including any abusive conduct by any adult member of the child's household. 23 Pa.C.S. § 5303. A dependency hearing is a form of custody proceeding. 23 Pa.C.S. § 5343. Thus, a judge in a dependency proceeding has authority to modify the existing custody arrangement whether or not the judge makes a finding of dependency. Indeed, recently in Charles v. Stehlik, 560 Pa. 334, 340, 744 A.2d 1255, 1258 (2000), we stated: "It is axiomatic that in custody disputes, `the fundamental issue is the best interest of the child.'" In order for courts in custody disputes to accommodate the best interests of the child, the judge must have broad discretion to act in terms of modifying custody. Custody orders, unlike orders in other civil matters, are inherently mutable when the circumstances dictate a change or modification. Therefore, granting custody judges broad discretion to act when the court deems it appropriate is necessary to meet the best interests of children.
[1] 23 Pa.C.S.A. §§ 6103-6117.
[2] 23 Pa.C.S.A. §§ 6301-6384.
[3] I would note that if the Agency investigating the abuse determined that the non-custodial parent were unwilling to file a petition regarding the abuse, then this could be evidence that the non-custodial parent was not ready, willing and able to assume custody and might be, in an appropriate case, supportive of a finding that the abused child is "dependent." However, that is not the case here, as more fully discussed in the ensuing discussion.
[4] The Dissent's concerns that by holding that the child here is not "dependent" our decision today in some way limits the options of a trial court to order only an automatic transfer of custody to the non-custodial parent are unfounded. 23 Pa.C.S.A. § 6108, in addition to allowing various forms of custodial arrangements, allows the court to grant "any other appropriate relief" requested by the non-custodial parent. Further, an assessment of what permanent custody arrangement is in the best interest of the child will be made in the custody hearing pursuant to Title 23, Chapter 53.
[5] Section 6315 states that a child may be taken into protective custody as provided for in 42 Pa.C.S.A. § 6324.
[6] The petition for dependency did not specifically outline a particular event occurring within this time frame, but referred to Mother's behavior throughout the agency contact with her. (R. 1a-2a). We must assume that the agency reported the conduct to the family court judge during the custody proceeding.
[7] Of course, if Father failed to file for custody or otherwise assert his custodial rights, the child would remain in protective services and the county agency could petition to declare the child dependent as set forth in the discussion above.
[1] These proceedings should be distinguished from "shelter" proceedings. See 23 Pa.C.S. § 6315.
[2] In this case, the trial court determined that M.L.'s mother was unable to provide proper parental care and control because the mother's behavior placed the child in imminent risk of emotional and mental harm; that if the behavior continues, the father will not be able to enjoy a normal relationship with his daughter; that M.L. will be at an emotional and mental disadvantage when attempting to develop relationships with men in general and her father in particular; that this behavior creates unnecessary invasions into M.L.'s childhood and her parents' lives; and that CYS would have to investigate these allegations which would cause an unnecessary strain on the agency. Tr. Ct. Opin. at 8.
[3] Neither the majority opinion nor the parties' briefs set forth the applicable standard and scope of review. On the legal issue of whether a court may adjudge a child to be dependent when the non-custodial parent is ready, willing and able to provide the child with proper parental care and control, the standard of review is error of law. See Morrison v. Dept. of Public Welfare, 538 Pa. 122, 646 A.2d 565, 571 (1994). The scope of review of a question of law is plenary, Phillips v. A-Best Products Co., 542 Pa. 124, 665 A.2d 1167, 1170 (1995), i.e., a broad scope of review. As to the trial court's finding of dependency, the issue involves a mixed question of fact and law, so we review that finding for an abuse of discretion and an error of law. See Morrison, 646 A.2d at 571. With regard to the scope of review, the trial court cited several reasons for its decision, and thus our scope of review is limited to those reasons. See id. at 570.
[4] In footnote 3 of the majority opinion, the majority attempts to cure the defect by relying on the definition of "custody proceeding" in the provisions relating to the Uniform Child Custody Jurisdiction Act, 23 Pa.C.S. § 5341 et seq. Reliance on this definition is misplaced for two reasons. First, these provisions address interstate, intrastate and international jurisdictional conflicts, none of which are implicated in this case. Second, the definition is not a legislative grant that confers jurisdiction over the child in an action brought under the Juvenile Act.

Nor can the majority sua sponte expand this court's jurisdiction by asserting that in custody matters, the court should consider the best interests of the child. Clearly, the court must evaluate the best interests of the child, but only after the court has jurisdiction to do so, as the legislature has provided. 42 Pa.C.S. § 6351(a) (if the court determines that the child is dependent, then the court may make a disposition best suited to the child's welfare). Prior to that time, the only relevant inquiry is whether the child is dependent. 42 Pa.C.S. § 6341(a).
[5] The version of section 6302 which was in effect at the time of the trial court hearing provides:

"Dependent child." A child who:
(1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals;
(2) has been placed for care or adoption in violation of law;
(3) has been abandoned by his parents, guardian, or other custodian;
(4) is without a parent, guardian, or legal custodian;
(5) while subject to compulsory school attendance is habitually and without justification truant from school;
(6) has committed a specific act or acts of habitual disobedience of the reasonable and lawful commands of his parent, guardian or other custodian and who is ungovernable and found to be in need of care, treatment or supervision;
(7) is under the age of ten years and has committed a delinquent act;
(8) has been formerly adjudicated dependent, and is under the jurisdiction of the court, subject to its conditions or placements and who commits an act which is defined as ungovernable in paragraph (6); or
(9) has been referred pursuant to section 6323 (relating to informal adjustment), and who commits an act which is defined as ungovernable in paragraph (6).
All subsequent references in this opinion refer to the current version of the Juvenile Act.
[6] This interpretation is further supported by 42 Pa.C.S. § 6351(b), which requires certain pre-placement findings prior to the removal of a dependent child "from his home". This language indicates that proper parental care or control must be lacking in the child's home, regardless of whether one or both parents reside there.
[7] Such a result is often in the best interests of the child. For example, consider the case in which a mother, who takes medication for her bipolar condition, has primary physical custody of her six-year-old son. Assume that the father has had almost no involvement with his son, although he seems to be a suitable caretaker as he is raising two other children with his current wife. On two occasions, the mother stopped taking her medication, which resulted in the child being placed in dangerous situations. The child's school alerted CYS, which initiated an investigation and then filed a dependency petition, arguing that the child should be deemed to be dependent because of the possibility that the mother may again cease taking her medication. If the Juvenile Court judge believes that the mother may stop taking her medication, then the Juvenile Act intends that the judge be allowed to enter a finding of dependency and order that given the father's absence in the child's life, it is in the best interests of the child that he stays with his mother with supervision and monitoring.

As in the above example, the mere fact that a non-custodial parent is ready, willing and even able to take custody of the child does not necessarily mean that custody with that person is in the best interests of the child. Life is replete with examples of non-custodial parents, who may be fine citizens in all other respects, but who have not had any contact, or at least have had only minimal contact, with their child over the course of that child's life. The fact that this "complete stranger" is a biological parent is certainly a factor to be taken into consideration by the court when making a decision in a dependency proceeding. Yet, the biological connection alone cannot suffice as an unassailable determining factor; it is only one factor in determining the best disposition for the child in the situation presented.
[8] Additionally, the majority's decision invites several procedural difficulties. Presumably, to ensure that a finding of dependency is made when a child is endangered, CYS must now include in the petition specific allegations that will support a finding that the non-custodial parent is not ready, willing and able to provide the child with proper parental care and control. This will necessitate additional investigation into the availability and fitness of the non-custodial parent, which may cause undue delay when the child is endangered. Then, there is the unresolved question as to what standard should apply: should the court use the "best interests" standard, or need the court merely determine that the non-custodial parent is ready, willing and able to care for the child? If the latter standard applies (as the majority implies), does CYS bear the burden of proving that the non-custodial parent is not ready, willing and able to care for the child, or does the non-custodial parent have to prove those elements to the satisfaction of the court? The majority opinion fails to address these concerns, or provide any guidance to the lower courts.