J-S12045-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: M.F. and M.F., MINOR CHILDREN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: B.D., MOTHER | No. 2805 EDA 2014 |

Appeal from the Order entered August 26, 2014,
in the Court of Common Pleas of Philadelphia County, Family
Court, at No(s): CP-51-DP-0001913-2014, CP-51-DP-0001914-2014,
FID: 51-FN-001837-2014

BEFORE:  BOWES, SHOGAN, and FITZGERALD*, JJ.

MEMORANDUM BY FITZGERALD, J.:                **FILED APRIL 10, 2015**

B.D. ("Mother") appeals from the order entered on August 26, 2014, in the Philadelphia County Court of Common Pleas, which found her female child, M.F., born in July of 2008, ("Child #1"), and her female child, M.F., born in January of 2010, ("Child #2"), collectively ("Children"), not dependent, dismissed the petition filed by the Department of Human Services of Philadelphia County ("DHS"), and confirmed custody of Children with Father.  Mother contends the trial court should have determined Children were dependent.  We affirm.

The trial court set forth the facts and procedural history of this case as follows:

> Both Child #1 and Child #2 were in the home and custody of their Mother.  On July 15, 2014, Mother took Child #1, a 4-year-old girl, to her primary care physician ("PCP").  The PCP recommended that Mother take Child #1

_____

* Former Justice specially assigned to the Superior Court.

to The Children's Hospital of Philadelphia ("CHOP") for examination and testing. Child #1 tested positive for chlamydia. On July 18, 2014, DHS received a Child Protective Services ("CPS") report alleging that on July 10, 2014, Mother's paramour [ ] observed Child #1 standing on a bed with her dress pulled up while Mother's paramour's 11-year-old son sexually assaulted Child #1. DHS also learned that Mother's paramour's 6-year[-]old son had previously sexually assaulted Child #1. On July 19, 2014, a Safety Plan was implemented[,] which took Child #1 and Child #2 out of Mother's home and placed them with Father. On July 21, 2014, DHS visited [Children] in Father's home. Child #2 stated to DHS that she had observed Mother's paramour's son touching Child #1's buttocks, and Child #1 also stated to DHS that Mother's paramour's son touched her buttocks. All parties tested negative for chlamydia. DHS conducted a forensic interview to try to determine how Child #1 contracted chlamydia, but due to her age and developmental status, Child #1 was unable to verbalize what had happened to her; therefore, DHS did not know how Child #1 contracted chlamydia.

On July 25, 2014, Mother denied having a history of chlamydia and substance abuse. DHS later learned that Mother's medical records indicate that Mother does have a history of chlamydia and Mother has had past positive test results for chlamydia. DHS learned that Mother had tested positive for chlamydia when Child #1 was three months old. DHS requested Mother's complete medical records, but Mother failed to provide them. DHS was unable to determine if Mother had chlamydia during her pregnancy with Child #1. Even if she had chlamydia during her pregnancy, there is a possibility that it would not have passed to Child #1 because Child #1 was born via cesarean. On August 26, 2014, an adjudication hearing was held. Reasonable efforts by DHS were found, and [Children] were found not dependent. The petition filed by DHS was dismissed, and custody of [children] was confirmed with Father pursuant to Pa.R.J.C.P. § 1409(a)(2).

Trial Ct. Op., 11/4/14, at 1-2 (citations to record omitted).

On September 25, 2014, Mother filed a timely notice of appeal. Mother also filed a contemporaneous Concise Statement of Errors Complained of on Appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The trial court filed a responsive opinion.

Mother raises the follow issue for our review: "Whether [F]ather, and not [M]other, should have been given custody of the minor children, M.F. [ ] and M.F.[?]" Mother's Brief at 4.

Mother argues that the evidence was sufficient to support an adjudication of dependency. Mother raises concerns about Father being abusive and selling marijuana. Mother's Brief at 8 (unpaginated). She contends an adjudication of dependency "would also ensure that [Mother] participates in programs designed to address her history of substance abuse and mental health issues, before she is reunited with [Children]." *Id.* She concludes that the trial court should have considered and determined the Children to be dependent, requiring DHS to put supervision in place to alleviate any safety concerns while Children are in Father's custody. *Id.* at 9.

Our review is governed by the following principle:

> [T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010) (citation omitted).

Pennsylvania Rule of Juvenile Court Procedure 1409 provides:

**A. Adjudicating the child dependent.** Once the court has made its findings under Rule 1408, the court shall enter an order whether the child is dependent.

\* \* \*

(2) *No dependency*. If the court finds the child not to be dependent or the court finds a parent ready, willing, and able to provide proper parental care or control, the court shall:

(a) dismiss the petition;

(b) order the child to be discharged from custody and any restrictions ordered in the proceedings; and

(c) enter an order identifying individual(s) who will have the legal and physical custody until such order is modified by further order of the court.

Pa.R.J.C.P. 1409(A)(2)(a)-(c).

Section 6302 of the Juvenile Act defines a dependent child, in part, as

a child who:

is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk[.]

42 Pa.C.S. § 6302.

"The burden of proof in a dependency proceeding is on the petitioner

to demonstrate by clear and convincing evidence that a child meets that

statutory definition of dependency." ***In re M.T.***, 101 A.3d 1163, 1173 (Pa. Super. 2010) (citation omitted). "The definition of a dependent child contained in section 6302 clearly states that a child must **lack a parent**, guardian or other legal custodian who can provide appropriate care to the child. **A child whose non-custodial parent is ready, willing and able to provide such care does not meet this definition.**" ***In re M.L.***, 757 A.2d 849, 851 (Pa. 2000) (emphases added).

In ***In re G., T.***, 845 A.2d 870 (Pa. Super. 2004), we stated:

> The question of whether a child is lacking proper parental care or control so as to be a dependent child encompasses two discrete questions: whether the child presently is without proper parental care and control, and if so, whether such care and control are immediately available.

***Id.*** at 872 (internal quotations and citations omitted).

In the case *sub judice*, the trial court opined:

> In the instant case, **it was established by testimony that Father is ready, willing, and able to provide proper parental care and control of [C]hildren**. [C]hildren have been residing with Father since July 18, 2014, and there are no concerns with the girls continuing to reside with Father. Father's home is appropriate, safe, and all family members residing in Father's home have been cleared. There are no safety and no dependency concerns in regard to Father's home. Since residing with Father, [C]hildren have thrived. Father testified that he understands all the services [C]hildren need and he will ensure that [C]hildren continue to receive those services. Father will also bring [C]hildren to have supervised visitation with Mother.
>
> Mother is an inappropriate resource for [C]hildren. Mother is given supervised visitation because of the concerns regarding who is around [C]hildren when Child

#1 and Child #2 are with Mother. The trial court has great reservations about Mother's ability to protect the safety of [C]hildren. Another concern is Mother's ability to ensure that [C]hildren's health and welfare needs are met. Children were diagnosed as "failure to thrive." Consequently, [C]hildren were supposed to be fed PediaSure formula but there were instances when Mother did not give the PediaSure formula to [C]hildren as she had been instructed to do. The medical records from CHOP indicate that Child #1 is developmentally delayed. Mother told DHS that Child #1 suffered from cranial stenosis as an infant and currently suffers from acid reflux, muscle deformity, and vision problems. DHS social worker testified that DHS had had concerns with Mother's ability to parent because Mother did not cooperate with DHS or with Father.

Trial Ct. Op. at 3-4 (emphasis added and citations to record omitted).

The trial court authorized the transfer of custody to Father, a non-custodial parent whom the trial court found was ready, willing, and able to provide proper parental care and control. *Id.* at 4. Moreover, the trial court found that Father is able to take the Children for all their services and understands his obligations as a parent. *Id.* We find that the trial court properly dismissed the dependency petition, and confirmed custody of Children with Father. *See* 42 Pa.C.S. § 6302; Pa.R.J.C.P. 1409(a)(2); *In re M.L.*, 757 A.2d at 851. Accordingly, we discern no abuse of discretion. *See In re R.J.T.*, 9 A.3d at 1190.

Order affirmed.

- 6 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/10/2015