J-S14031-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: G.R., A MINOR, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: S.R., NATURAL MOTHER | No. 1713 MDA 2015 |

Appeal from the Order Entered September 3, 2015
In the Court of Common Pleas of York County
Juvenile Division at No(s): CP-67-DP-0000167-2015

BEFORE:  FORD ELLIOTT, P.J.E., PANELLA, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:             **FILED APRIL 05, 2016**

S.R. ("Mother") appeals from the order entered on September 3, 2015, in the York County Court of Common Pleas Family Court, adjudicating dependent her son, G.R. (born in July of 2015) ("Child"), and removing Child from the custody of Mother and F.R. ("Father").[1]  We affirm.

On July 14, 2015, York County Office of Children, Youth, and Families ("CYF") received a referral due to allegations that Child exhibited symptoms of drug withdrawal after his birth.  At the time of Child's birth, Mother tested positive for marijuana, oxycodone, opiates, and fentanyl.  Both parents have a history of substance abuse.  Five days after Child's birth, Father tested positive for opiates, and Mother tested positive for oxycodone and opiates.

---

[1] Father is neither a party to this appeal nor did he file his own separate appeal.

*Former Justice specially assigned to the Superior Court.

On July 29, 2015, CYF filed for emergency protective custody of Child. On August 4, 2015, an emergency hearing was held, and the trial court placed Child in the custody of CYF.

On August 13, 2015, August 20, 2015, and September 3, 2015, dependency hearings were held. During the hearings, Dr. Bruce Klaskin, an expert in pain medicine; Dr. Douglas McCracken, Mother's family physician; Leah Ketchum, a CYF caseworker; Dr. Thomas Hargest, Father's family physician; Dr. Almira Contractor, Child's pediatrician; Dr. Jonathan Liss, the Chief of Newborn Medicines and Director of the Neonatal Intensive Care Unit ("NICU") at York Hospital; Ms. McWilliams, a registered nurse at York Hospital; Ms. Beth Garrett, a social worker for York Hospital; Mother; and Father testified. On September 3, 2015, the trial court adjudicated Child dependent and ordered Child was to remain in foster care.

On October 5, 2015, Mother timely appealed and filed a statement of errors complained of pursuant to Pa.R.A.P. 1925(a)(2)(i).

On appeal, Mother raises the following issue:

> Did the trial court err in adjudicating [Child] to be a dependent Child and removing him from the care of [M]other without proof that she was unable to care for him?

Mother's Brief at 5.

We review this matter under the following standard of review:

> Our standard of review in dependency cases is well established; the standard this Court employs is broad. We accept the trial court's factual findings that are supported by the record, and defer to the court's credibility determinations. We accord great weight to this function of the hearing judge because he is in the

position to observe and rule upon the credibility of the witnesses and the parties who appear before him. Relying upon his unique posture, we will not overrule [the trial court's] findings if they are supported by competent evidence.

*In re R.P.*, 957 A.2d 1205, 1211 (Pa.Super. 2008) (citations, quotation, and quotation marks omitted).

Our Supreme Court has stated:

A court is empowered by 42 Pa.C.S. § 6341(a) and (c) to make a finding that a child is dependent if the child meets the statutory definition by clear and convincing evidence. If the court finds that the child is dependent, then the court may make an appropriate disposition of the child to protect the child's physical, mental and moral welfare, including allowing the child to remain with the parents subject to supervision, transferring temporary legal custody to a relative or a private or public agency, or transferring custody to the juvenile court of another state. 42 Pa.C.S. § 6351(a).

*In re M.L.,* 562 Pa. 646, 649, 757 A.2d 849, 850–51 (2000).

To adjudicate a child dependent, a trial court must determine the child:

is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk.

42 Pa.C.S.A. § 6302. "The burden of proof in a dependency proceeding is on the petitioner to demonstrate by clear and convincing evidence that a child meets that statutory definition of dependency." *In re G.,T.*, 845 A.2d 870, 872 (Pa.Super. 2004) (citation omitted).

Even after a child has been adjudicated dependent, however, a court may not separate that child from his or her parent unless it finds that the separation is clearly necessary. Such necessity is implicated where the welfare of the child demands that he [or she] be taken from his [or her] parents' custody.

*In re G.,T.*, 845 A.2d at 873 (citations, quotations, and quotation marks omitted).

Mother argues the trial court erred in adjudicating Child to be dependent absent proof that Mother was unable to care for Child. Mother's Brief at 8. The trial court determined Mother's history of drug abuse and continued abuse of prescription medication throughout Mother's pregnancy demanded the removal of Child from Mother's home. Trial Court Opinion, filed 10/21/15, at 1-2. The trial court relevantly found:

At the time of [Child]'s birth, Mother tested positive for marijuana, oxycodone, opiates, and fentanyl. Drug use throughout her pregnancy led to [C]hild being born addicted to narcotics and suffering through withdrawal after his birth. Five days after [C]hild's birth, Father tested positive for opiates and Mother again tested positive for oxycodone and opiates. Both parents have stated that they have valid prescriptions, but Father refused to execute a release to allow for verification of his prescriptions. While Mother has verified some of her prescriptions, she continues to test positive for narcotics that she is not prescribed.

*Id*. at 2.

The trial court was presented with extensive testimony concerning Mother's abuse of prescription medication. For instance, Dr. Klaskin testified Mother was his patient since July of 2011. N.T., 8/20/15, at 13-14. Dr. Klaskin testified he changed Mother's medications to 10 milligrams of

oxycodone and removed other prescribed medications after he learned Mother was pregnant in February of 2015. *Id.* at 14-15. Dr. Klaskin testified he warned Mother of the dangers of taking medication that was not prescribed to her and the harm it could do to Child. *Id.* Dr. Klaskin testified that, on May 28, 2015, Mother's drug screen was positive for morphine, fentanyl, alprazolam, hydroxyalprazolam, oxazepam, and heroin metabolites. *Id.* at 15-16. Following the positive drug test, Mother was discharged from the medical practice because Dr. Klaskin had not prescribed these drugs to Mother. *Id.* at 15. Dr. Klaskin testified the drugs for which Mother tested positive are powerful opiates, which are harmful to an unborn baby. *Id.* at 16.

Dr. McCracken testified Mother has been his patient since July of 2015. *Id.* at 27-28. Dr. McCracken testified that, while Mother was pregnant, he only prescribed vitamin D to her. *Id.* at 30. Dr. McCracken testified that, on July 31, 2015, after Mother gave birth to Child, he prescribed Mother acetaminophen, buspirone, fentanyl, and oxycodone, and orphenadrine for her chronic knee pain. *Id.* at 29-30.

Dr. Contractor testified that, on August 8, 2015, she became Child's pediatrician following Child's discharge from the NICU. N.T., 9/3/15, at 47. Dr. Contractor testified Child went through a period of withdrawal from the time she examined Child on August 8 and August 15. *Id.* at 54. Dr. Contractor testified Child exhibited withdrawal symptom of sneezing,

- 5 -

excessive stool, jitteriness, and crying on August 8, 2015. *Id.* Dr. Contractor testified she recommended Mother should not breastfeed Child because the oxycodone she was taking would be harmful to Child. *Id.* at 48-50. Mother could not explain why she tested positive for marijuana when she gave birth to Child. *Id.* at 50.

Dr. Liss was involved in Child's care while he was hospitalized at the NICU. N.T., 9/3/15, at 15-16. Dr. Liss testified Child had neonatal abstinence syndrome due to exposure to opiates during Mother's pregnancy and Child was experiencing withdrawal from the drugs Mother was taking while pregnant. *Id.* at 16-17. Dr. Liss testified Mother testified positive for opiates and marijuana, neither of which were prescribed to her. *Id.* at 19-20. Dr. Liss testified that, because of the non-prescribed opiates and cannabis in Mother's system, he did not authorize Mother to breastfeed Child. *Id.* at 20-21. Dr. Liss testified Mother acknowledged an opiate addiction. *Id.* at 22.

Ms. Williams testified that, when examining Mother to help her breastfeed Child, she found a cap syringe in Mother's bra. *Id.* at 90. Ms. McWilliams testified Mother stated she picked up the syringe outside because she did not want anyone to get hurt. *Id.* Ms. Garrett testified Mother tested positive for opiates and oxycodone after the syringe was found in Mother's bra. *Id.* at 91.

Ms. Ketchum received a referral involving Child after Child's birth. *Id.* at 96. Ms. Ketchum testified CYF recommends that Mother and Father take a drug evaluation and Child remain in foster care placement. *Id.* at 114. Ms. Ketchum further requested that Child be adjudicated dependent. *Id.* at 113-14.

The trial court did not accept Mother's explanation regarding her drug abuse and found her testimony to be "absurd." Trial Court Opinion, 10/21/15, at 3. In this regard, the trial court noted Mother testified she never took illegal drugs and Dr. Klaskin's testimony Mother tested positive was wrong. *Id.* With regard to Ms. McWilliams finding a syringe in Mother's bra, Mother claimed she found the syringe in the parking lot and picked it up so that no one would get hurt. *Id.* The trial court further noted that, when Mother tested positive for fentanyl, she indicated Father's fentanyl patch fell off him during the night and landed on her shoulder. *Id.* at 102. However, the trial court specifically indicated it did not find Mother's testimony to be credible; but rather, found the testimony of the doctors, nurses, and caseworkers to be credible. *Id.* at 3-4. Our standard of review does not permit this Court to make factual findings anew, re-weigh the evidence, or impeach the credibility determinations of the trial court, absent an abuse of discretion. *See In re R.P.*, 957 A.2d at 1211.

After a careful review of the record, we find competent evidence supports the trial court's determination that Child is dependent, and that

placement of Child with CYF is warranted and appropriate. Although Mother has the desire to care for Child, the trial court did not abuse its discretion in finding that, due to her continued drug abuse, which places Child's health and welfare at risk, Mother is not able to provide the proper care Child needs. Accordingly, we affirm the trial court's order adjudicating Child dependent and ordering that Child remain in foster care.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/5/2016