J. S58014/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: | : | IN THE SUPERIOR COURT OF |
| H.T. A/K/A H.D., A MINOR | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: | : | No. 753 MDA 2017 |
| C.D., BIOLOGICAL MOTHER | : | |

Appeal from the Order Dated April 4, 2017,
in the Court of Common Pleas of Lackawanna County
Juvenile Division at No. CP-35-DP-0000015-2017

BEFORE:  GANTMAN, P.J., SHOGAN, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:     **FILED SEPTEMBER 19, 2017**

C.D. ("mother") appeals from the April 4, 2017 order entered in the Court of Common Pleas of Lackawanna County that adjudicated her biological daughter H.T. a/k/a H.D. ("minor child") dependent and, due to the presence of aggravated circumstances, ordered that no further efforts to preserve or reunify the minor child with mother were necessary.  We affirm.

The trial court set forth the following factual and procedural history:

> Minor child came into the [Lackawanna County Office of Youth and Family Services' ("Agency")] custody following her discharge from the hospital subsequent to her birth on February [], 2017. Initially, the Agency was seeking immediate custody due to [mother]'s history with the Agency in regards to domestic violence, drug and alcohol use, homelessness, mental health issues, psychiatric hospitalizations, and inability to understand how to care for a child.  [Mother] has been involved with the Agency since 2010, at which time [mother] gave birth to a child.  [Mother]'s rights were voluntarily terminated on that child on September 11, 2012.

[Mother] has an IQ score of 64. Case worker Jennifer Dunston (hereinafter "Ms. Dunston") testified that [mother] has been diagnosed with PDD (pervasive developmental disorder), intellectual disability, depression, ODD (oppositional defiant disorder), and ADHD (attention-deficit/hyperactivity disorder). Since being involved with [mother], the Agency has had concerns about [mother]'s cognitive and emotional delays. For example, at one time [mother] reported to that Agency that she was living with two (2) friends but did not know their names or where she was living. In 2010, [mother] met someone on the Internet, took a cab to Pittsburgh, and upon arrival in Pittsburgh did not have the $400.00 to pay the taxi driver.

Subsequently, [mother] gave birth to another child on February [], 2014 and the Agency again became involved. It was reported that [mother] was not taking her required medications, and that minor child was placed into custody with the Agency following a domestic violence incident with her paramour with whom she resided, [V.S.]. When that child was in custody with the Agency, [mother] was inconsistent with services and scheduled visits with the child. Following the placement of the minor child, [mother] was again homeless and unable to maintain housing. Ms. Dunston testified that the record notes that [mother] did not have an understanding of the child's development. [Mother]'s rights were involuntarily terminated with respect to that child on September 17, 2015. [Mother] was not present for that hearing, and her whereabouts were unknown.

[Mother]'s rights were voluntarily terminated on a third child on June 2, 2016. [Mother] was again homeless, and inconsistent with services provided by the Agency and visits with that minor child. Subsequently, [mother] gave birth to a fourth child, J.T., who was placed in custody of the Agency on June 10, 2016. [Mother]'s fourth minor child is currently in kinship with his paternal aunt and uncle.

Regarding minor child J.T., the Agency was granted aggravated circumstances on September 19, 2016 by the Honorable Judge Chester Harhut, with no attempts of reunification. Stephanie Herne, the caseworker that worked specifically with [mother] and minor child J.T., testified that [mother] could have attended twenty-two (22) visits with J.T. but only showed to fourteen (14). Ms. Herne further testified that [mother] displayed low empathy, required prompts to care for the basic needs of the minor child during every visitation, and struggled with her own hygiene. Since September, [mother] made no progress in terms of her ability to care for the minor child. [Mother] consistently missed parenting assessments, and is only at the beginning stages with the child at issue.

The Agency has continued to offer [mother] with services. The Agency was aware of [mother]'s pregnancy with the child at issue in our case in September of 2016, and attempted to prepare [mother] for said child by offering parenting services and through working with Scranton Counseling Center. While [mother] did participate in a few visitations with minor child J.T., she was very inconsistent and unable to care for the child on her own. [Mother] was not compliant with any services until March of 2017. In March 2017, [mother] began attending parenting sessions through the Agency and Scranton Counseling Center, attended a medication management appointment and a therapy appointment, and completed an intake assessment at PATH for drug and alcohol. While [mother] completed an intake for drug and alcohol, she was a no-call no-show for her first appointment at PATH.

The minor child at issue is [mother]'s fifth child, and at the time the Agency took custody, the father was unknown. Paternity has since been established to be [V.S.]. The Agency still must assess [V.S.'s] parenting to assure that he is capable to care for the minor child properly. [V.S.] also has a history of domestic violence against [mother], and was incarcerated for the same in 2014 for a period of

one (1) year. The Agency is seeking to reunify the minor child with [V.S.], and is not looking to find aggravated circumstances against [V.S.]. [V.S.] was to begin supervised visitation through the Agency in late April.

Minor child is currently in placement in kinship foster care with [mother]'s cousins [T. and S.B.]. The minor child is also residing with a biological sibling who will be adopted by the [kinship foster caretakers]. Minor child was born premature at thirty-four (34) weeks, was on a feeding tube and could not breathe on her own. Minor child was discharged from the hospital on February 28, 2017, and placed on vitamins and iron due to being born premature. While in the NICU at the hospital, [mother] had unlimited access to the minor child but had not visited with the minor child since February 20, 2017. Currently, minor child does not have any medical issues.

An adjudication hearing was held on April 4, 2017, wherein this Court found minor child adjudicated dependent, custody placement remaining with the Agency. This Court found clear and convincing evidence that the parental rights of [mother] have been involuntarily terminated with respect to another child of [mother], and voluntarily terminated with respect to two (2) other children of [mother]. This Court also found that this is [mother]'s fifth child, and that she has not followed recommendations of the Agency for the last seven (7) years. Therefore, aggravated circumstances exist with minor child []. The Court held that [mother] is not obligated to accept, nor is the [A]gency obligated to provide, services to [mother].

[Mother] filed the current appeal of our April 4, 2017 Order on May 4, 2017. [Mother] simultaneously filed a concise statement of errors/matters complained of on appeal pursuant to [Pa.R.A.P. 1925(b)] alleging that following a finding of aggravated circumstances, this Court erred as a

> matter of law and manifestly abused its discretion in determining that the Agency is not required to make efforts to reunify [mother] and minor child.

Trial court opinion, 6/1/17 at 1-5 (citations to notes of testimony omitted).

Mother raises the following issue for our review: "Whether following a finding of aggravated circumstances, the trial court erred as a matter of law and/or manifestly abused its discretion in determining the Agency is not required to make efforts to reunify biological mother and the [minor] child?" (Mother's brief at 6 (capitalization omitted).)

> Our standard of review in dependency cases is well established; the standard this Court employs is broad. We accept the trial court's factual findings that are supported by the record, and defer to the court's credibility determinations. We accord great weight to this function of the hearing judge because he is in the position to observe and rule upon the credibility of the witnesses and the parties who appear before him. Relying upon his unique posture, we will not overrule the trial court's findings if they are supported by competent evidence.

***R.P. v. L.P.***, 957 A.2d 1205, 1211 (Pa.Super. 2008) (internal citations, quotation marks, and brackets omitted).

> Our Supreme Court, in ***In re M.L.***, 562 Pa. 646, 757 A.2d 849, 850-51 (Pa. 2000), stated that a court:
>
> > is empowered by 42 Pa.C.S.[A.] § 6341(a) and (c) to make a finding that a child is dependent if the child meets the statutory definition by clear and convincing evidence. If the court finds that the child is dependent, then the court may make an appropriate disposition of the child to protect the child's physical, mental and moral

> welfare, including allowing the child to remain with the parents subject to supervision, transferring temporary legal custody to a relative or a private or public agency, or transferring custody to the juvenile court of another state. 42 Pa.C.S.[A.] § 6351 (a).

*Id.* (citation omitted).

> A dependent child is one who:

>> is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's, guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk[.]

> 42 Pa.C.S.[A.] § 6302(1).

*Id.* (brackets in original).

> The Juvenile Act, 42 Pa.C.S.[A.] §§ 6301-65, which was amended in 1998 to conform to the federal Adoption and Safe Families Act ("ASFA"), 42 U.S.C. § 671 *et seq.*, controls the adjudication and disposition of dependent children. The policy underlying these statutes aims at the prevention of children languishing indefinitely in foster care, with its inherent lack of permanency, normalcy, and long-term parental commitment. Furthermore, the 1998 amendments to the Juvenile Act, as required by ASFA, place the focus of dependency proceedings on the child. Safety, permanency, and the

> well-being of the child must take precedence over all other considerations, including the rights of the parents.

*Id.* at 1217 (internal citations to case law omitted).

Under the definitions section of the Juvenile Act, an aggravated circumstance is defined, among other circumstances, as when "[t]he parental rights of the parent have been involuntarily terminated with respect to a child of the parent." 42 Pa.C.S.A. § 6302 (definition of "aggravated circumstances," Subsection (7)).

> Pursuant to the Juvenile Act, if a court finds that aggravated circumstances exist in a given case, the court must then "determine whether or not reasonable efforts to prevent or eliminate the need for removing the child from the home or to preserve and reunify the family shall be made or continue to be made . . . ." 42 Pa.C.S.A. § 6341(c.1). A court may end reasonable efforts at its discretion." *See In re A.H.*, 2000 PA Super 357, 763 A.2d 873, 878 (Pa. Super. 2000).

*In the Interest of L.V.*, 127 A.3d 831, 839 (Pa.Super. 2015); *accord R.L.*, 957 A.2d at 1217 (finding that the existence of an aggravated circumstance permits a trial court to suspend efforts at reunification).

Here, mother neither disputes the trial court's dependency adjudication nor its aggravated circumstance finding. Mother's sole contention is that the trial court abused its discretion in determining that the Agency is not required to make reunification efforts. We disagree.

Following a hearing on this matter, where two Agency caseworkers and mother testified, the trial court explained its findings of dependency and

aggravated circumstances and its decision to order that no further efforts to preserve or reunify the minor child with mother were necessary, as follows:

> Based upon my review of the testimony that was provided here today, there's no question that the Agency has met by clear and convincing evidence that an aggravating circumstance does exist, that being [mother] had one other child wherein her parental rights were involuntarily terminated.
>
> The next step would be as to what we do subsequent to that. And the Court has made additional findings as part of the record here today, that being that there's a seven year history that the Agency has with [mother].
>
> [Minor child] is her fifth child and made reference to the fact that one child, her rights were involuntarily terminated. There were two others where her rights were voluntarily terminated, and a 4th child, [J.T.] the third, who was born on May [], 2016, that aggravating circumstances existed in that particular case with no efforts to reunify child with mother.
>
> Also, that there is evidence that mother has a history of mental illness, which she admitted to on the stand today. That there is inconsistent stable housing, even though there were periods that there were, but there's still over the seven year period that there's [sic] inconsistencies with regards to stable living conditions.
>
> There's also a history wherein [mother] did not or could not follow the recommendations of the Agency over the past seven years. Albeit that there has been some effort over the last month. I don't think that's enough with regards to this particular case involving [minor child].

Notes of testimony, 4/4/17 at 79-80.

We have carefully reviewed the record in this case. As the record supports the trial court's factual findings, we discern no abuse of discretion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/19/2017