J-S76031-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE INTEREST OF: C.G., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.G., MOTHER | |
| | No. 3737 EDA 2015 |

Appeal from the Order Entered October 29, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): 51-FIN-001889-2015
CP-51-DP-0002298-2015

------------------------------------------------------------------------------------

| | |
|---|---|
| IN THE INTEREST OF: V.G., A MINOR | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.G., MOTHER | |
| | No. 3738 EDA 2015 |

Appeal from the Order Entered October 29, 2015
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): 51-FN-001889-2015
CP-51-DP-0002296-2015

BEFORE: STABILE, J., DUBOW, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:       **FILED NOVEMBER 15, 2016**

---

[*] Former Justice specially assigned to the Superior Court.

Appellant, A.G. ("Mother"), files these consolidated appeals from the orders entered October 29, 2015, in the Court of Common Pleas of Philadelphia County by the Honorable Vincent L. Johnson, granting the petition of the Philadelphia Department of Human Services ("DHS") and adjudicating V.G., born in December of 2003, and C.G., born in December of 2005 (collectively, "Children"), dependent pursuant to 42 Pa.C.S. § 6302. Upon oral motion, the court additionally made a finding of child abuse, as defined by 23 Pa.C.S. § 6303, against Mother. After review, we affirm.

The trial court summarized the relevant procedural and factual history, in part, as follows:

> On June 23, 2014, [DHS] received a General Protective Services ("GPS") report which alleged that Mother had been seen using profanity towards [] Children. It was also alleged that Mother was seen shoving [] Children into her car. It was alleged that Mother "flicked" [C]hildren in the back of the head and pushed them. It was also alleged that T.G. ("Father") had primary custody of [] Children, however, Mother had [C]hildren one day during the week and every other weekend. The report was substantiated.
>
> On July 7, 2015, DHS visited Father's home. During the visit, V.G. stated that he did not like living with Mother because she physically abused him. C.G. also stated that Mother physically abused V.G. DHS also learned that Father had obtained a Protection from Abuse ("PFA") Order against Mother as to himself and [] Children.
>
> On July 13, 2015, DHS learned that the PFA as to Father against Mother was vacated, however, the PFA against Mother as to [] Children stood.
>
> On July 28, 2015, DHS went to Mother's home. Mother answered the door but refused to allow DHS to enter her home stating that DHS was harassing her. DHS noticed [] Children inside of Mother's home but could not assess their safety. DHS

contacted the police to attempt to gain entry, however, Mother refused to allow DHS or the police entry into her home.

On August 14, 2015, DHS filed a Motion to Compel Mother's cooperation with the DHS investigation of the GPS report.

The Motion to Compel was granted by this Court on August 27, 2015. On the same day, this Court issued a Stay Away Order against Mother stating that "[M]other to have no in person, phone, text, or email contact" with [] Children. This Court also ordered that Father was to have no conversation with [] Children regarding their testimony in this case.[1] It should be noted that Mother was present August 27, 2015 and received notice of the October 29, 2015 hearing.

[On] October 5, 2015, C.G. was evaluated by the Children's Crisis Treatment Center ("CCTC"). C.G. was referred to CCTC because of:

> Mother's []erratic and cruel behavior: including a peanut milk incident; witnessing domestic violence between his parents; witnessing adult sexual activity under Mother's supervision; exposure to sexual paraphernalia under Mother's supervision; poor supervision; reported alcohol abuse; and witnessing Mother sit on and choke V.G.

On October 13, 2015, V.G. was evaluated by CCTC. V.G. was referred to CCTC because of:

> multiple traumatic events experienced in Mother's care: witnessing adult drug use of heroin and cocaine[;] adult sexual activity[;] adult sexual paraphernalia; witnessing domestic violence between his parents and Mother's paramours; shown photos of male genitalia with sexually transmitted infections; witnessed police coming to the home on multiple occasions; throwing items at V.G.; having a hot pepper shoved down his throat; verbal and physical abuse.

---

[1] The Court additionally ordered DHS to file an urgent petition and continued the matter until October 29, 2015.

Also, in January, 2015 after the loss of their maternal grandfather, Mother showed the Children pictures of their grandfather's dead body. As a result of V.G.'s trauma, he has anxiety, fears, constantly seeks approval from others, gorges on food, verbal and physical aggression, lack of empathy and poor hygiene.

On October 29, 2015, there was an adjudicatory hearing. During the hearing, the Court heard from six witnesses: V.G., C.G., Cathy Rosber (DHS Social Worker), Carla Fletcher (Child Advocate Social Worker), Laura Nevin (IHIPS case manager for the Village), and Mother.

V.G. and C.G. were too afraid to testify in open court. As a result, the Children gave *in camera* testimony with all the interested parties' attorneys present.

Trial Court Opinion ("T.C.O."), 6/7/16, at 1-3 (some footnotes omitted).

By orders dated and entered October 29, 2015, the trial court adjudicated Children dependent pursuant to 42 Pa.C.S. § 6302. Children were placed in the custody of Father with supervision and services. Pursuant to an oral motion of the child advocate, the court additionally made a finding of child abuse, as defined by 23 Pa.C.S. § 6303, against Mother. By further order of December 8, 2015, the trial court granted Mother permission to file an appeal *nunc pro tunc*. Thereafter, on December 9, 2015, Mother, through appointed counsel, filed notices of appeal, along with concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). This Court consolidated the appeals *sua sponte* on January 7, 2016.

On appeal, Mother raises the following issues for our review:

1. Did the [t]rial [c]ourt err and/or abuse its discretion by entering an Order on October 29, 2015 finding that Mother

- 4 -

was responsible for child abuse under 23 [Pa.C.S.] Section 6303, when Mother was not provided with notice of the hearing and did not have time to prepare for the hearing?

2. Did the [t]rial [c]ourt err in its determination that child abuse existed as to [M]other as child abuse was not supported by clear and convincing evidence?

3. Did the [t]rial [c]ourt abuse its discretion when it found child abuse as to Mother?

4. Did the [t]rial [c]ourt err and/or abuse its discretion by entering an Order on October 29, 2015 finding Mother responsible for child abuse under 23 [Pa.C.S. Section] 6303, as there was not clear and convincing evidence presented for a finding of child abuse against Mother?

5. Did the [t]rial [c]ourt err and/or abuse its discretion by entering an Order on October 29, 2015 finding Mother responsible for child abuse under 23 [Pa.C.S. Section] 6303, as the [DHS] and the child advocate failed to meet its burden for a finding of child abuse under 23 [Pa.C.S. Section] 6303?

6. Did the trial court err when it found that the [DHS] by clear and convincing evidence had met its burden to find [Children] to be a Dependent Child pursuant to the Pennsylvania Juvenile Act, 42 [Pa.C.S.] Section 6302?

Mother's Brief at vi-vii.

Our standard of review for dependency cases is as follows:

[T]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 608 Pa. 9, 26-27, 9 A.3d 1179, 1190 (2010) (citations omitted).

We first address Mother's challenge to the trial court's finding of dependency as supported by the record. In adjudicating Children dependent, the trial court concluded:

> [T]he [c]ourt heard testimony from several witnesses and carefully considered all of the evidence that was presented at the adjudicatory hearing. The evidence that was presented supported the finding that proper parental care and control was not immediately available to [] Children by Mother for the purposes of determination that [] Children's health, safety and welfare were at risk.
>
> Specifically, the [c]ourt heard testimony that V.G. experienced multiple traumatic events while under Mother's supervision he was: verbally and physically abused, exposed to adult sexual behavior and paraphernalia, given drugs and alcohol, locked in various locations in the house, and left alone in the home. The [c]ourt also heard testimony from C.G., who testified that while under Mother's supervision he was: intentionally exposed to peanuts (C.G. is allergic), exposed to sexual behavior and paraphernalia, and witnessing [sic] the physical and verbal abuse of V.G. This gave the [c]ourt grave concerns about [] Children's safety and welfare.

T.C.O. at 14 (citations to record omitted).

Mother, however, avers, "Neither [C]hildren's testimony nor the witnesses['] testimony indicate that either child was without proper parental care or control, subsistence, education, or other care or control necessary for his physical, mental or emotion health, or morals." Mother's Brief at 12. She further states, "All [C]hildren's basic needs were being met by [M]other. They had food, clothing, education, and were properly supervised." *Id.* We disagree.

> [T]o adjudicate a child dependent, a trial court must determine, by clear and convincing evidence, that the child:

is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk.

42 [Pa.C.S.] § 6302. "Clear and convincing" evidence has been defined as testimony that is "so clear, direct, weighty, and convincing as to enable the trier of facts to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue." *In re C.R.S., [K.A., B.S. & N.S.,]* 696 A.2d 840, 843 (Pa. Super. 1997) (citation omitted).

In accordance with the overarching purpose of the Juvenile Act "[t]o preserve the unity of the family wherever possible," *see* 42 [Pa.C.S.] § 6301(b)(1), "a child will only be declared dependent when he is presently without proper parental care and when such care is not immediately available." *In re R.T. [and A.T.],* [ ] 592 A.2d 55, 57 (Pa. Super. 1991) (citation omitted). This Court has defined "proper parental care" as "that care which (1) is geared to the particularized needs of the child and (2) at a minimum, is likely to prevent serious injury to the child." *In re C.R.S., [K.A., B.S. & N.S.,] supra* at 845 (citation omitted).

*In re A.B.*, 63 A.3d 345, 349 (Pa. Super. 2013).

Upon careful review of the record, we discern no abuse of discretion with the trial court's determination to adjudicate Children dependent. We find that the competent evidence of record supports the trial court's order. Children testified to numerous incidents of verbal and physical abuse at the hands of Mother.[2] These include hitting and name-calling, in particular

---

[2] We note the trial court found Children's testimony credible. N.T. at 79; T.C.O. at 10.

directed at V.G., as well as cursing. Notes of Testimony (V.G.) ("N.T. (V.G.)"), 10/29/15, at 10, 21-23, 32-33, 35-37; Notes of Testimony (C.G.) ("N.T. (C.G.)"), 10/29/15, at 9, 12, 15, 17-18. V.G. asserted that Mother "would always hit me because I would like call my dad or something and she would like always make fun of me. She calls me fat all of the time." N.T. (V.G.) at 10. V.G. further explained that Mother hit him with "[d]oors, like toys, phones. She hit me in the mouth with a phone. Anything she can find basically." *Id.* at 32-33. The last time he saw Mother, she punched him in the head, resulting in a bump on the top of his head, and sat on top of him and placed him in a headlock so that he could not breathe. *Id*. at 22, 35-37. C.G. confirmed that Mother treats V.G. "bad[ly]," stating, "She treats [V.G.] like she's abusing an animal. . . . I mean like she calls him fat and like he hits him- - no, I meant she hits [V.G.] and like I feel bad for him because he's like always left out." N.T. (C.G.) at 15. C.G. recounted instances where Mother "smacked" V.G. with a flexible ruler, leaving black marks, and "pushed [V.G.] down the steps and there were scars." N.T. (C.G.) at 9, 18. Further, Mother locked V.G. in a room and a closet. N.T. (V.G.) at 11-12, 21-22, 27, 32. Mother denied V.G. food. *Id.* at 12-13. Moreover, Mother purposefully exposed C.G., who has a peanut allergy, to a peanut product in the form of a milkshake.[3] N.T. (C.G.) at 12, 16.

---

[3] Mother unsuccessfully attempted to blame this incident on her former boyfriend, C.

In addition, while in Mother's care, Children were left unattended and unsupervised. N.T. (V.G.) at 16-17, 29. Children witnessed and were exposed to alcohol and drug use. N.T. (V.G.) at 13, 27-28, 34-35; N.T. (C.G.) at 10, 13-14; Center Based Services Treatment Plan Entry (V.G.), 10/13/15, at 3; Center Based Services Treatment Plan Entry (C.G.), 10/5/15, at 3. V.G. noted observing Mother and her friends "smok[ing] stuff" and sniffing white powder, and Mother's friend T.D. injecting with needles. N.T. (V.G.) at 15, 27-28, 30-32, 34-35. V.G. even asserted that he was made to taste alcohol by Mother and her boyfriends and that Mother gave him pills which made him "sleepy." *Id*. at 14-15, 34.

Moreover, evidence of mental and sexual abuse while in Mother's care was offered. Evidence was presented that Children were subjected to adult sexual activity, paraphernalia, and photographs[4], as well as domestic violence. Center Based Services Treatment Plan Entry (V.G.), 10/13/15, at 3; Center Based Services Treatment Plan Entry (C.G.), 10/5/15, at 3; N.T. (V.G.) at 18. Children were shown photographs of Maternal Grandfather's body after he was deceased. Center Based Services Treatment Plan Entry (V.G.), 10/13/15, at 4; Center Based Services Treatment Plan Entry (C.G.), 10/5/15, at 4; N.T. (V.G.) at 18. V.G. also testified of Mother's friends'

_____

[4] Children were shown "graphic photographs of male genitalia with sexually transmitted infections." Center Based Services Treatment Plan Entry (V.G.), 10/13/15, at 3.

threats of harm to Father if V.G. did not state that he wanted to live with Mother. N.T. (V.G.) at 19.

Further, DHS social worker Cathy Rosber testified to her belief that Children were not "safe in Mother's care." N.T. at 13. Ms. Rosber opined that Mother was in need of drug and alcohol treatment, mental health services, and anger management. *Id.* at 13-14. Similarly, child advocate social worker Carla Fletcher indicated concerns with Children being allowed to go with Mother absent mental health treatment. *Id.* at 26-27. Ms. Fletcher stated,

> They've told me that they're very fearful of [Mother]. They are even afraid to have phone contact or text message contact. She's very abuse [sic]. She picks on [V.G.], mostly. She's verbally attacked him, physically attacked him. [C.G.] as well. Until she would get some significant mental health treatment, I wouldn't recommend any visits.

*Id.* at 26-27. Significantly, neither child desired further contact with Mother. N.T. (V.G.) at 19-20; N.T. (C.G.) at 8. C.G. did not even want to see Mother in a supervised setting with other people present. N.T. (C.G.) at 20-21. C.G. referred to Mother as a "drunk" and a "liar." *Id.* at 8. As such, the record substantiates the lack of parental care and control, and the finding of dependency. Thus, we will not disturb this finding.[5]

---

[5] Our Supreme Court has held "a child, whose non-custodial parent is ready, willing and able to provide adequate care to the child, cannot be found dependent. . . ." *In re M.L.*, 562 Pa. 646, 647, 757 A.2d 840, 850-851 (2000). Despite indication that Father was "ready, willing, and able to care

*(Footnote Continued Next Page)*

Next, we examine Mother's claims of trial court error in finding child abuse against her, due to lack of notice, when child abuse was not pleaded in the dependency petition and there was no separate motion for child abuse. Mother's Brief at 6. As to this allegation of error, in suggesting that Mother waived this issue, the trial court stated the following:

> Mother argues that [M]other was not given the proper notice for the adjudication hearing and was not given adequate time to prepare for the hearing.[6] Mother was present at the August 27, 2015 hearing, which was immediately prior to the adjudicatory hearing. Further, in the transcripts, there was no issue raised that Mother did not have sufficient time to prepare for the hearing, nor did Mother request a continuance for further investigation.

T.C.O. at 12.

Mother, nevertheless, maintains the failure to argue abuse in the dependency petition or by separate motion resulted in a lack of notice. As a result, and in violation of her constitutional right to due process, Mother posits that she was unable to adequately prepare and defend herself as to the issue of abuse. Mother's Brief at 8-9.

_(Footnote Continued)_ —————

for [C]hildren," testimony was presented that Father and Children remained in need of the additional support services which were in place. N.T. at 13, 15-16, 29-30. Moreover, counsel for Father indicated that, despite disagreement as to the present inability of Father, he would not take a position "in order for [C]hildren to continue to get the services that they need and in their best interest." **Id**. at 78.

[6] We note Mother does not dispute notice as to the adjudicatory hearing. Rather, Mother challenges adequate notice as to a child abuse hearing.

> Since child abuse was not plead[ed] in the dependency petition or in a separate Motion, [M]other did not have notice that it would be an issue raised at trial and, therefore, could not prepare a proper defense in violation of her due process rights. Here [M]other was ambushed with an oral Motion for child abuse at the end of a dependency hearing when child abuse was never plead[ed] in the dependency petition.

*Id.* at 9. Critically, Mother asserts that she preserved this objection. *Id.*

Upon review, we again disagree. To the extent Mother argues a lack of due process because she had an insufficient time to prepare, Mother waived this issue, as she failed to first raise it with the trial court. *See* Pa.R.A.P. 302(a) (providing for waiver of issues not first raised in lower court); *Fillmore v. Hill*, 665 A.2d 514, 515-16 (Pa. Super. 1995) (stating, "[I]n order to preserve an issue for appellate review, a party must make a timely and specific objection at the appropriate stage of the proceedings before the trial court. Failure to timely object to a basic and fundamental error, such as an erroneous jury instruction, will result in waiver of that issue. On appeal, the Superior Court will not consider a claim which was not called to the trial court's attention at a time when any error committed could have been corrected.") (citations omitted).

Counsel for Mother raised an objection at the hearing regarding notice as to abuse not being raised in the dependency petition. Counsel for Mother stated, "First of all, there's no indication of child abuse I would submit. There was nothing in the petition that was not brought before the Court so I'd object . . . on notice on that." N.T. at 78-79. However, counsel for Mother did not do so immediately at the time the child advocate requested a

finding of abuse. Further, counsel for Mother did not indicate a lack of sufficient time to prepare. Likewise, counsel for Mother did not request a continuance or other similar relief. In fact, throughout the hearing, counsel for Mother attempted to refute the evidence as to abuse.

Moreover, and more importantly, abuse is, in fact, raised in the dependency petitions. Paragraph 6 of the petitions states, "Upon information provided by the social worker, this child is dependent and/or abused pursuant to the Juvenile Act (42 Pa.C.S. § 6302 (Dependent Child)(1)) and/or the Child Protective Services Law (23 Pa.C.S. § 6303(b)(1))." Dependency Petitions, 10/15/15, ¶ 6. Further, paragraphs d, g, and h of the Statement of Facts, appended to and incorporated into the petitions at paragraph 6, reference "physical abuse" and/or "physical discipline," as well as an outstanding PFA order against Mother on behalf of Children. Dependency Petitions, 10/15/15, ¶ 6, Statement of Facts ¶¶ d, g, h. Hence, Mother's claim is without merit.

Lastly, we address Mother's second through fifth issues together, as they all dispute the trial court's finding of child abuse against Mother. Child abuse was defined under the prior version of the Child Protective Services Law ("CPSL"), in pertinent part, as follows:

> (i) Any recent act or failure to act by a perpetrator which causes non-accidental serious physical injury to a child under 18 years of age.
>
> . . .

- 13 -

(iii) Any recent act, failure to act or series of such acts or failures to act by a perpetrator which creates an imminent risk of serious physical injury to or sexual abuse or sexual exploitation of a child under 18 years of age.

(iv) Serious physical neglect by a perpetrator constituting prolonged or repeated lack of supervision or the failure to provide essentials of life, including adequate medical care, which endangers a child's life or development or impairs the child's functioning.

23 Pa.C.S. § 6303(b)(1). Serious physical injury was defined as any injury that causes "severe pain" or "significantly impairs a child's physical functioning, either temporarily or permanently." 23 Pa.C.S. § 6303(a).

However, under the current version of the CPSL, amended in 2013 and effective December 31, 2014, child abuse is now defined as follows:

**(b.1) Child abuse.--**The term "child abuse" shall mean intentionally, knowingly or recklessly doing any of the following:

(1) Causing bodily injury to a child through any recent act or failure to act.

(2) Fabricating, feigning or intentionally exaggerating or inducing a medical symptom or disease which results in a potentially harmful medical evaluation or treatment to the child through any recent act.

(3) Causing or substantially contributing to serious mental injury to a child through any act or failure to act or a series of such acts or failures to act.

(4) Causing sexual abuse or exploitation of a child through any act or failure to act.

(5) Creating a reasonable likelihood of bodily injury to a child through any recent act or failure to act.

(6) Creating a likelihood of sexual abuse or

- 14 -

exploitation of a child through any recent act or failure to act.

(7)     Causing serious physical neglect of a child.

(8)     Engaging in any of the following recent acts:

(i)  Kicking, biting, throwing, burning, stabbing or cutting a child in a manner that endangers the child.

(ii)  Unreasonably restraining or confining a child, based on consideration of the method, location or the duration of the restraint or confinement.

(iii)  Forcefully shaking a child under one year of age.

(iv)  Forcefully slapping or otherwise striking a child under one year of age.

(v)  Interfering with the breathing of a child.

(vi)  Causing a child to be present at a location while a violation of 18 Pa.C.S. § 7508.2 (relating to operation of methamphetamine laboratory) is occurring, provided that the violation is being investigated by law enforcement.

(vii)  Leaving a child unsupervised with an individual, other than the child's parent, who the actor knows or reasonably should have known:

(A)  Is required to register as a Tier II or Tier III sexual offender under 42 Pa.C.S. Ch. 97 Subch. H (relating to registration of sexual offenders), where the victim of the sexual offense was under 18 years of age when the crime was committed.

(B)  Has been determined to be a sexually violent predator under 42 Pa.C.S. § 9799.24 (relating to assessments) or any of its predecessors.

> (C)    Has been determined to be a sexually
> violent delinquent child as defined in 42 Pa.C.S.
> § 9799.12 (relating to definitions).

>   (9)       Causing the death of the child through any act or
>             failure to act.

23 Pa.C.S. § 6303(b.1).[7]

Bodily injury is defined as "[i]mpairment of physical condition or substantial pain." 23 Pa.C.S. § 6303(a). Serious mental injury is defined as "[a] psychological condition, as diagnosed by a physician or licensed psychologist, including the refusal of appropriate treatment, that: (1) renders a child chronically and severely anxious, agitated, depressed, socially withdrawn, psychotic or in reasonable fear that the child's life or safety is threatened; or (2) seriously interferes with a child's ability to accomplish age-appropriate developmental and social tasks." *Id*. Further, serious physical neglect is defined as follows:

> Any of the following when committed by a perpetrator that
> endangers a child's life or health, threatens a child's well-being,
> causes bodily injury or impairs a child's health, development or
> functioning:

>   (1)    A repeated, prolonged or egregious failure to
>          supervise a child in a manner that is appropriate
>          considering the child's developmental age and
>          abilities.

>   (2)    The failure to provide a child with adequate
>          essentials of life, including food, shelter or medical
>          care.

---

[7] Upon review, as this matter involves ongoing abuse of Children, we find both the current and prior versions of the CPSL would be applicable.

*Id*. In ***In the Interest of J.R.W.***, 631 A.2d 1019, 1024 (Pa. Super. 1993), we explained that, pursuant to the doctrine of incorporation, the Juvenile Act's definition of dependent child subsumed the definition of child abuse outlined in the CPSL. Thus, we stated the two laws "must be applied together in the resolution of child abuse complaints." *Id*. at 1023. We reasoned,

> The Legislature intended a detailed and specific definition of abuse to leave no doubt as to the capacity of the trial court, which in this case can only be the Juvenile Court, to make a finding and determination that a child has been abused. In its capacity as a trial judge, the Juvenile Court judge will look and must look to the above definition of child abuse in a case referred by the child protective service agency to the Court under petition for review of dependency when child abuse has been alleged.

*Id*.

In addition to establishing the pertinent definition of child abuse, the court in ***In the Interest of J.R.W.*** also stressed that the juvenile court's determination of whether child abuse occurred must be supported by clear and convincing evidence. *Id*.

> [T]he clear and convincing evidence necessary to find dependency, has been imposed by the Legislature as the standard which the Juvenile Court must apply in deciding abuse cases. . . . There is no conflict, constitutional or otherwise, with the clear and convincing evidence standard imposed by the Act to establish child abuse.

*Id*. ***See also In re L.Z.***, ___ Pa. ___, 111 A.3d 1164, 1174 (2015).

In supporting its determination of a finding of child abuse against Mother, the trial court reasoned:

- 17 -

In this case, there is an abundance of evidence indicating that Mother placed the health, safety and welfare of [] Children at risk. Mother did not properly supervise [] Children and on multiple occasions, left [] Children unsupervised. When [] Children were under Mother's care, they were exposed to adult sexual behavior, V.G. was forced to drink alcohol and take pills, and C.G. was intentionally exposed to food, a peanut milkshake, that he was allergic to. Mother by law has an affirmative duty to protect her [c]hildren. Mother blamed the peanut milkshake on her boyfriend. The law is clear, "[the] parental duty includes protection of a child from the harm others may inflict." During several instances, Mother placed [] Children in danger for their lives, in the case of Mother choking V.G. and exposing C.G. to peanuts. There was also a danger to [] Children's development which is supported by [] Children's CCTC reports. In particular, because of his trauma, V.G. has anxiety, gorges on food, constantly seeks the approval of others, has a lack of empathy, is verbally and physically abusive and has poor hygiene.

T.C.O. at 18-19 (citations omitted) (footnote omitted).[8]

Conversely, Mother argues that Children, specifically V.G., did not testify as to suffering any serious injury. "There is no testimony from V.G. or any other witness that he was ever in "severe pain" or had any type of significant impairment to his ability to function physically." Mother's Brief at 10 (citations to record omitted). Further, Mother asserts that "there was nothing in the testimony which indicated any recent act, failure to act or series of acts on the part of [M]other which created an imminent risk of

---

[8] The trial court appeared to be referencing child abuse under the current version of the CPSL on the record, noting "we're looking at the new expanded view of child abuse." N.T. at 81. However, the trial court's opinion, as well as Mother's brief, focuses solely on the prior version of the CPSL. *See* T.C.O. at 15; Mother's Brief at 9. As indicated above, as this matter involves ongoing abuse, we find both the current and prior versions of the CPSL applicable.

serious physical injury [or] serious physical neglect which endangered V.G.'s life or development or impaired his functioning." *Id.* (citation to record omitted). We disagree.

Upon careful review of the record, we discern no abuse of discretion with the trial court's determination of abuse against Mother. We find that the competent evidence of record supports the trial court's finding of abuse under both the prior and current versions of the CPSL. In so finding, we reference our discussion as to dependency above. As revealed, Children were subject to verbal, physical, mental, and sexual abuse resulting in trauma while in Mother's care. Significantly, as a result, it was reported that V.G. suffered from "anxiety (e.g. picks sores and scabs on body); fears (e.g.[] afraid of Q-tips, vomit, bees); constantly seeks approval from peers; gorging on food; verbal and physical aggression toward brother; lack of empathy; and poor hygiene." Center Based Services Treatment Plan Entry (V.G.), 10/13/15, at 3-4. Similarly, it was reported that C.G. suffered from the following:

> daily worries and fears about the safety of his brother, [V.G.]; fear of seeing [Mother] and the possibility of being hit by her; separation anxiety when away [sic] [C.G.] is away from [Father] for long periods; anger when things do not go [C.G.]'s way; physical aggression towards his brother [V.G.]; intrusive thoughts and feelings regarding incidents that occurred while [C.G.] and [V.G.] lived with [Mother].

Center Based Services Treatment Plan Entry (C.G.), 10/5/15 at 3. Among other things, Children were therefore diagnosed with post-traumatic stress

disorder, child abuse-physical, child psychological abuse, child neglect, and child sexual abuse (suspected). Center Based Services Treatment Plan Entry (V.G.), 10/13/15, at 4-5; Center Based Services Treatment Plan Entry (C.G.), 10/5/15, at 4-5. As such, the record substantiates the finding of abuse against Mother and we will not disturb this finding.[9]

Accordingly, after a thorough review of the record, including the notes of testimony of the October 29, 2015 hearing, the extensive exhibits presented, the trial court opinion, and the parties' briefs, as we discern no abuse of discretion, we affirm the orders of the trial court adjudicating Children dependent and issuing a finding of child abuse against Mother.

Orders affirmed.

Judge Dubow joins the memorandum.

Judge Stabile concurs in the result.

---

[9] As we decipher Mother's argument, Mother appears to be challenging the finding of abuse, not the determination identifying her as the perpetrator. Nonetheless, we find that Mother was the perpetrator of all such abuse through either her "acts or omissions." 23 Pa.C.S. § 6381(d); *In re L.Z.*, ___ Pa. ___, 111 A.3d at 1184-85.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 11/15/2016