J-S51017-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: K.F., MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: K.A., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 816 EDA 2018 |

Appeal from the Order Entered February 9, 2018
In the Court of Common Pleas of Philadelphia County Domestic Relations
at No(s):  CP-51-DP-0000243-2018

| | | |
|---|---|---|
| IN THE INTEREST OF: K.F., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: K.A., MOTHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 821 EDA 2018 |

Appeal from the Order February 9, 2018
In the Court of Common Pleas of Philadelphia County Family Court at
No(s):  CP-51-DP-0000244-2018,
FID: 51-FN-316479-2009

BEFORE:  DUBOW, J., NICHOLS, J., and FORD ELLIOTT, P.J.E.

MEMORANDUM BY NICHOLS, J.:                    **FILED SEPTEMBER 26, 2018**

K.A. (Mother) appeals from the order entered February 9, 2018, which discharged the dependency petition filed by the Philadelphia Department of Human Services (DHS), removed Khy.F. (born December 2005) and Kha.F. (born August 2007) (collectively, Children) from her custody, and awarded custody to B.F. (Father).  We affirm.

Prior to the commencement of the instant matter, Mother and Father exercised a shared custody arrangement by court order of April 3, 2017. *See* N.T., 2/9/18, at 12-13. Father, or paternal grandmother, picked Children up from their after school program, had custody of Children until no later than 8:00 p.m., and dropped them off at Mother's house, where they stayed until it was time for school the next day. *Id.* at 12. On the weekends, Father had custody of Children until Sunday before 8:00 p.m. *Id.*

DHS became involved with the family on December 13, 2017, after receiving a General Protective Services (GPS) report.[1] *Id.* at 1. Children went to school and stated they had been beaten by Mother that morning, that they did not know why they had been hit, and that they were afraid to return to the home with Mother. *Id.* at 4-5. After meeting with DHS, Children stated that Mother was mentally and physically abusive, took out her anger on them, and had abused Children's older siblings when they were young. *Id.* Children further stated that this behavior has been going on since they were young, with a frequency of about five times per month, and that they are not sure why they are being disciplined. *Id.* at 11. Moreover, when asked whether they had seen drugs or alcohol, Children stated that Mother "uses a pipe" and

_____

[1] We note, initially, that many of the details in the trial court's opinion are taken wholesale from DHS' petition for adjudication of dependency. This petition was never stipulated to by Mother and never entered into evidence. Accordingly, we base our procedural history solely upon the evidence introduced at the hearing through testimony.

has a lot of lighters. *Id.* at 10. There were no marks or bruises on Children at that time. *Id.*

However, upon review, DHS determined that the GPS report was founded, but that the Child Protective Services (CPS) report that it received at the same time was unfounded. *Id.* at 6-7. Children were removed from the home and placed with paternal grandmother with a safety plan. *Id.* at 5-6.

Sean Callan, the DHS social worker assigned to the case, interviewed Children. At first, he was unsure whether their accusations were credible. *Id.* at 8. He changed his mind after receiving a letter from Mary Theresa Fitzgerald, a behavioral therapist at Turning Points for Children, describing an encounter between Mother and Children, which made her uncomfortable. *Id.* at 8-9. The therapist likened Children's behavior to someone suffering from post-traumatic stress disorder. *Id.* at 9. Children stated they wanted to be in the custody of Father. *Id.* at 13. Mr. Callan recommended that Children be released to Father's custody or care, noting that his home was appropriate. *Id.*

On February 9, 2018, the court held a hearing on the petition. Mr. Callan testified on behalf of DHS. Mother, represented by counsel, testified on her own behalf. Children did not appear at the hearing and did not testify,

although they were represented by James Martin, Esquire.[2]  Mr. Callan testified to the facts as discussed above and additionally noted that Father had appropriate housing, his wife had been cleared, and recommended that custody be confirmed with Father.  *See id.* at 2-14.  Father testified he was ready, willing, and able to take custody of Children.  *Id.* at 28.

Mother testified that she had never hit her children and that she treats them very well.  *Id.* at 22.  Mother also stated that she encountered Children's therapist with Children the week earlier, asked Children in front of the therapist whether "mommy ever beat you" and that she recorded Children saying "no."  *Id.* at 22-23.  Mother denied using drugs.  *Id.* at 25.  On cross-examination, DHS introduced testimony of Mother's prior criminal history.  *Id.* at 25-28.

At the conclusion of the hearing, the court stated that it was concerned with Ms. Fitzgerald's assessment, Mother's behavior of recording Children, her criminal past, and Children's statements that they are afraid to be with Mother.  *Id.* at 31-32.  The court added that there was no dependency issue and that Children should be returned to Father.  *Id.* at 32.

_____

[2] The order appointing Attorney Martin indicates that he was appointed to serve in dual roles as a guardian *ad litem*, representing Children's best interests, and as legal counsel, representing their preferences.  *See* Order, 2/5/18, at 1.  As there appears to be no conflict between Children's best and legal interests, there is no issue with Attorney Martin's dual roles.  *See In re T.S.*, --- A.3d ----, at *10 (Pa. filed Aug. 22, 2018); *see also In re Adoption of L.B.M.*, 161 A.3d 172 (Pa. 2017).

That same day, the trial court entered an order concluding that Children were not dependent and dismissing the petition for dependency. *See* Order, 2/9/18, at 1. In the order, the court found that there was clear and convincing evidence to substantiate the allegations against Mother. *Id.* Moreover, the court found that to allow Children to remain in Mother's home would be contrary to Children's welfare, and that it would be in Children's best interest to be removed from Mother's home. *Id.* at 1-2. The order then granted Father physical and legal custody of Children. *Id.* at 2.

On March 8, 2018, Mother contemporaneously filed a timely notice of appeal and a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[3]

On appeal, Mother raises the following issue for our review:

> Whether [t]he trial court erred and/or abused its discretion by discharging the dependency petition and awarding custody to [Father] where [Mother] had primary custody prior to the filing of the dependency petition and did not believe that there were any conditions which should have caused the court to transfer custody of the children[.]

*See* Mother's Brief at 5.

Although Mother claims that the trial court had no legal authority to transfer custody from Mother to Father because it made no finding of dependency, she acknowledges in her brief that Pennsylvania Supreme Court precedent provides the trial court with this authority. *Id.* at 11-12 (citing *In*

---

[3] Mother initially *pro se* filed her notice and statement. On April 1, 2018, Mother's counsel filed a motion to supplement her statement, which this Court granted on April 13, 2018. *See* Order, 4/13/18, at 1.

*re M.L.*, 757 A.2d 849, 849 (Pa. 2000) (holding that a child whose non-custodial parent is ready, willing, and able to provide adequate care to the child cannot be found dependent)).  In spite of this precedent, Mother requests that we reexamine this Pennsylvania Supreme Court decision based on "changes to the law over the years."  *Id.*  Mother further claims that she is a competent parent who is able to care for Children.  *Id.* at 10.  She argues that there was no corroboration of the allegations that she hit children, such as bruises or markings.  *Id.*  Mother maintains that she and Father are undergoing a custody dispute and that she believes Father persuaded Children to live with him full time.  *Id.*

With regard to dependency cases,

> [t]he standard of review which this Court employs in cases of dependency is broad.  However, the scope of review is limited in a fundamental manner by our inability to nullify the fact-finding of the lower court.  We accord great weight to this function of the hearing judge because he is in the position to observe and rule upon the credibility of the witnesses and the parties who appear before him.  Relying upon his unique posture, we will not overrule his findings if they are supported by competent evidence.

*In re N.A.*, 116 A.3d 1144, 1148 (Pa. Super. 2015).  Thus, we employ an abuse of discretion standard.  *In re L.Z.*, 111 A.3d 1164, 1174 (Pa. 2015).

A dependent child is a child who:

> (1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's,

guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk;

(2) has been placed for care or adoption in violation of law;

(3) has been abandoned by his parents, guardian, or other custodian;

(4) is without a parent, guardian, or legal custodian;

(5) while subject to compulsory school attendance is habitually and without justification truant from school;

(6) has committed a specific act or acts of habitual disobedience of the reasonable and lawful commands of his parent, guardian or other custodian and who is ungovernable and found to be in need of care, treatment or supervision;

(7) has committed a delinquent act or crime, other than a summary offense, while under the age of ten years;

(8) has been formerly adjudicated dependent, and is under the jurisdiction of the court, subject to its conditions or placements and who commits an act which is defined as ungovernable in paragraph (6);

(9) has been referred pursuant to section 6323 (relating to informal adjustment), and who commits an act which is defined as ungovernable in paragraph (6); or

(10) is born to a parent whose parental rights with regard to another child have been involuntarily terminated under 23 Pa.C.S. § 2511 (relating to grounds for involuntary termination) within three years immediately preceding the date of birth of the child and conduct of the parent poses a risk to the health, safety or welfare of the child.

See In re J.C., 5 A.3d 284, 289 (Pa. Super. 2010); see also 42 Pa.C.S. §

6302. Here, the relevant concerns are whether a child is presently without

such care or control, and whether such care or control are immediately available. *J.C.*, 5 A.3d at 289.

In *M.L.*, our Supreme Court held that:

> [t]he plain language of the statutory definition of a dependent child compels the conclusion that a child is not dependent if the child has a parent who is willing and able to provide proper care to the child. When a court adjudges a child dependent, that court then possesses the authority to place the child in the custody of a relative or a public or private agency. Where a non-custodial parent is available and willing to provide care to the child, such power in the hands of the court is an unwarranted intrusion into the family. Only where a child is truly lacking a parent, guardian or legal custodian who can provide adequate care should we allow our courts to exercise such authority. Accordingly, we hold that **where a non-custodial parent is ready, willing and able to provide adequate care to a child, a court may not adjudge that child dependent.**

*M.L.*, 757 A.2d at 851 (citation omitted and emphasis added); *accord In Interest of J.M.*, 166 A.3d 408, 415 (Pa. Super. 2017).

Here, the trial court concluded that Children were not safe in Mother's care based upon the GPS report, the testimony of Mr. Callan, the assessment of Ms. Fitzgerald, and Mother's own testimony. *See* N.T., 2/9/18, at 7-24, 31. In its findings, the court was concerned that Children were afraid to return to Mother's home, that Mother recorded Children in an attempt to prove that she did not hit Children, and that Mother had a criminal past. *See id.* at 4-5, 22-23, 25-28. The court was also concerned with Ms. Fitzgerald's assessment regarding Mother's interaction with Children. *See id.* 8-9. Ultimately, the trial court determined that Father was ready, willing, and able to take custody of Children. *See id.* at 13-14, 28, 32.

Accordingly, we conclude that the trial court's findings are supported by competent evidence in the record and should not be disturbed.  **See N.A.**, 116 A.3d at 1148.  Further, we find that the trial court did not abuse its discretion in its determination that Children were not dependent as Father was ready, willing, and able to care for them.  **See M.L.**, 757 A.2d at 851; **see also See Walnut St. Assocs., Inc. v. Brokerage Concepts, Inc.**, 20 A.3d 468, 480 (Pa. 2011) (noting that "the Superior Court must follow [the Supreme] Court's mandates, and it generally lacks the authority to determine that [the Supreme] Court's decisions are no longer controlling").

Order affirmed.

Judge Dubow did not participate in the consideration or decision of this case.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/26/18