J-S29001-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: S.W., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: N.W., MOTHER | : : : : : : | |
| | : | No. 870 EDA 2020 |

Appeal from the Order Entered February 20, 2020
In the Court of Common Pleas of Philadelphia County
Juvenile Division at No(s):  CP-51-DP-0001819-2019

BEFORE:   PANELLA, P.J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PANELLA, P.J.:                     Filed: August 20, 2020

N.W. (Mother) appeals the order of the Court of Common Pleas of Philadelphia County, entered on February 20, 2020, adjudicating dependent her minor daughter, S.W. (Child), born in October 2019, dependent. The order also removed Child from Mother's care and committed her to the legal custody of the Department of Human Services (DHS), placed Child in kinship care with her maternal grandmother, and determined that DHS had made reasonable efforts to prevent the removal of Child from Mother's care.[1]  We affirm.

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] The trial court appointed Attorney Neal M. Masciantonio as legal interests counsel/guardian *ad litem* (GAL) for Child.  **See generally In re J'K.M.**, 191 A.3d 907, 916 (Pa. Super. 2018) (holding that divergent opinions between Child and attorney who was Child's counsel and GAL as to whether child should

The trial court set forth the relevant factual and procedural history of this appeal as follows:

> On October 30, 2016, [DHS] received a General Protective Services (GPS) report alleging that Mother had intellectual disabilities. (N.T. 2/20/20 at 5-6). During the course of their investigation, DHS learned Mother had just given birth to Child, who was born premature, and subsequently left Child at the hospital. (*Id.* at 7). An Order of Protective Custody (OPC) was obtained due to concerns regarding Mother's erratic behavior and Mother's failure to visit the Child in the hospital for two weeks after her birth. (*Id.* at 11). Specifically, the DHS petition alleged that Mother claimed to not remember having Child. (*Id.* at 8). Additionally, there were concerns regarding Mother's mental health, due to her behavior and confirmed diagnoses of schizophrenia, depression, ADHD [(Attention Deficit Hyperactive Disorder)], and bipolar disorder. (*Id.* at 14). During the adjudicatory hearing [held on February 20, 2020,], there was testimony that Mother was recently placed on an involuntary hold and was in the process of being discharged from her inpatient

_____

be placed with her mother constituted a conflict, and thus appointment of separate GAL to represent child's best interests was warranted).

Here, Child was only four months old at the time of the adjudicatory/dispositional hearing on February 20, 2020. Thus, it appears that the trial court did not err in allowing Attorney Masciantonio to act as Child's sole representative, as Child was too young to express a preferred outcome. **See In re T.S.**, 648 Pa. 236, 192 A.3d 1080 (2018), in which the Supreme Court held that that the trial court did not err in allowing the children's GAL to act as their sole representative during the termination proceeding because, at two and three years old, they were incapable of expressing their preferred outcome. We may not address the quality of the appointed legal counsel's representation of Child in this matter, as no party has raised the issue. **See In re: Adoption of K.M.G.**, 219 A.3d 662, 669; 676 (Pa. Super. 2019) (*en banc*) (plurality of four Judges, with two Judges concurring separately on this point) (*limited appeal granted*, December 9, 2019) (holding that this Court only has authority to raise *sua sponte* the issue of whether the trial court appointed any counsel for the child, and not the authority to delve into the quality of the representation).

program for lack of compliance. (*Id.* at 15). Additionally, there was testimony that Mother lacked stable housing and was possibly homeless. (*Id.* at 15, 17, 21). Specifically, Beryl Williams, the Community Umbrella Agency (CUA) social worker, testified that she was unable to establish visitation prior to the adjudicatory hearing between the Child and Mother because she had no contact information for Mother. (*Id.* at 22).

Trial Court Opinion, 4/14/20, at 1-2.

At the conclusion of the adjudicatory hearing, the trial court adjudicated Child dependent, placed Child in the care and custody of DHS, and placed Child in kinship care. The trial court also concluded that DHS made reasonable efforts to prevent Child's removal from Mother's care. ***See*** Trial Court Order, 2/20/20, at 1.

On March 13, 2020, Mother timely filed a notice of appeal and a concise statement of errors complained of an appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(a)(2)(i) and (b).[2] On April 14, 2020, the trial court filed its opinion pursuant to Rule 1925(a).

---

[2] To the extent that DHS contends that pursuant to Pa.R.A.P. 302 Mother should have objected to the removal of Child from her care on the record and the court's finding that DHS had used reasonable efforts to prevent that removal, we disagree. Further, we also disagree with any assertion that Mother should have appealed from the shelter care order. ***See*** DHS's Brief, at 10-11. Mother properly appealed the dispositional order entered after the adjudication of dependency. ***See In the Interest of J.M.***, 219 A.3d 645, 650 (Pa. Super. 2019). There, this court stated that "[b]ased upon the two-step procedure contemplated by the Juvenile Act for declaring a child dependent (*i.e.*, an adjudication followed by a disposition, ***see*** 42 Pa.C.S. § 6341(c)), this Court has held that it is the dispositional order following a dependency adjudication that is a final appealable order." ***Id.***, at 651-652

Mother presents the following issue for our review:

Did the trial court abuse its discretion by failing to consider whether DHS made reasonable efforts to prevent removal of the Child from the home?

Mother's Brief, at 5.

Mother contends that, even if there is clear and convincing evidence that Child is dependent, there was no "clear necessity" for Child's removal from Mother's care. More specifically, Mother argues that there was insufficient evidence to establish that Mother "could or would" cause harm to Child. Appellant's Brief, at 6-7. Accordingly, Mother urges that the trial court failed to consider whether DHS made reasonable efforts to prevent the removal of Child from Mother's care.[3]

_____

(quoting *In the Interest of C.A.M.*, 264 Pa. Super. 300, 399 A.2d 786 (1979). As Mother is appealing the adjudicatory and dispositional order entered after the conclusion of the hearing, and the court's ruling regarding reasonable efforts to prevent the removal is in the order, she did not need to place her objections to the court's ruling regarding reasonable efforts on the record in order to preserve the issue for our review pursuant to Pa.R.A.P. 302.

[3] We note that DHS claims that Mother improperly conflates her argument concerning whether DHS failed to make reasonable efforts (which she raised in her concise statement and statement of issue presented on appeal section of her brief), with the argument that DHS failed to show a clear necessity for the removal of Child from Mother's care. *See* Appellee's Brief, at 10-11. DHS contends that Mother waived her argument concerning clear necessity. *Id.* Later in the brief, DHS posits that there was a clear necessity for the removal of Child from Mother, and asserts that DHS made reasonable efforts to prevent the removal of Child from Mother. *See id.* at 14-15. Therefore, as DHS acknowledges that the questions regarding the clear necessity for the removal and the reasonable efforts to prevent the removal are intertwined in this matter, we find both matters are preserved by Mother's concise statement

Initially, we note that

> [t]he standard of review in dependency cases requires an appellate court to accept the findings of fact and credibility determinations of the trial court if they are supported by the record, but does not require the appellate court to accept the lower court's inferences or conclusions of law. Accordingly, we review for an abuse of discretion.

*In re R.J.T.*, 9 A.3d 1179, 1190 (Pa. 2010) (citation omitted). "The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004) (citation omitted).

The burden of proof in a dependency proceeding is on the petitioner "to demonstrate by clear and convincing evidence that a child meets that statutory definition of dependency." *In re G.T.*, 845 A.2d 870, 872 (Pa. Super. 2004) (citation omitted). Section 6302 of the Juvenile Act, 42 Pa.C.S. §§ 6301-6375, defines a "dependent child" as a child who:

> (1) is without proper parental care or control, subsistence, education as required by law, or other care or control necessary for his physical, mental, or emotional health, or morals. A determination that there is a lack of proper parental care or control may be based upon evidence of conduct by the parent, guardian or other custodian that places the health, safety or welfare of the child at risk, including evidence of the parent's,

---

and statement of questions presented, and we decline to find waiver. ***See generally Krebs v. United Refining Company of Pennsylvania***, 893 A.2d 776, 797 (Pa. Super. 2006) (holding that an appellant waives issues that are not raised in both the concise statement of errors complained of on appeal and the statement of questions involved in the appellant's brief on appeal).

guardian's or other custodian's use of alcohol or a controlled substance that places the health, safety or welfare of the child at risk[.]

42 Pa.C.S.A. § 6302. "The question of whether a child is lacking proper parental care or control so as to be a dependent child encompasses two discrete questions: whether the child presently is without proper parental care and control, and if so, whether such care and control are immediately available." *G.T.*, 845 A.2d at 872 (citation and quotation marks omitted).

Our Supreme Court has held that "a child, whose non-custodial parent is ready, willing and able to provide adequate care to the child, cannot be found dependent . . . ." *In re M.L.*, 757 A.2d 849, 849 (Pa. 2000). This Court has further noted that

> [w]hen a child is adjudicated dependent, the child's proper placement turns on what is in the child's best interest, not on what the parent wants or which goals the parent has achieved. Moreover, although preserving the unity of the family is a purpose of the [Juvenile] Act, another purpose is to provide for the care, protection, safety, and wholesome mental and physical development of children coming within the provisions of this chapter. Indeed, [t]he relationship of parent and child is a status and not a property right, and one in which the state has an interest to protect the best interest of the child.

*In re K.C.*, 903 A.2d 12, 14-15 (Pa. Super. 2006) (citations and internal quotation marks omitted). Following an adjudication of dependency, the child may not be removed from the care of a parent absent a showing of clear necessity for removal namely, where the welfare of the child requires it. *See In re A.L.*, 779 A.2d 1172, 1175 (Pa. Super. 2001). When the trial court removes a child from his or her home, our Rules of Juvenile Court Procedure

provide that the court must determine whether "the child's placement is the least restrictive placement that meets the needs of the child, supported by reasons why there are no less restrictive alternatives available[.]" Pa.R.J.C.P. 1242(C)(3)(c); *see also* Pa.R.J.C.P. 1514(A)(2).

Essentially, Mother contends that the trial court erred by failing to consider the findings of fact required by 42 Pa.C.S. § 6351(b) and Pa.R.J.C.P. 1514(A)(5).

Section 6351(b) states in relevant part:

**(b) Required preplacement findings.**—Prior to entering any order of disposition under subsection (a) that would remove a dependent child from his home, the court shall enter findings on the record or in the order of court as follows:

(1) that continuation of the child in his home would be contrary to the welfare, safety or health of the child; and

(2) whether reasonable efforts were made prior to the placement of the child to prevent or eliminate the need for removal of the child from his home, if the child has remained in his home pending such disposition; or

(3) if preventive services were not offered due to the necessity for an emergency placement, whether such lack of services was reasonable under the circumstances; or

(4) if the court has previously determined pursuant to section 6332[4] (relating to informal hearing) that

---

[4] Section 6332 states, in relevant part:

If the child is alleged to be a dependent child, the court or master shall also determine whether reasonable efforts were made to prevent such placement or, in the case of an emergency

- 7 -

reasonable efforts were not made to prevent the initial removal of the child from his home, whether reasonable efforts are under way to make it possible for the child to return home; and

(5) if the child has a sibling who is subject to removal from his home, whether reasonable efforts were made prior to the placement of the child to place the siblings together or whether such joint placement is contrary to the safety or well-being of the child or sibling.

42 Pa.C.S. §6351 (b)(1)-(5) (footnote added).[5]

_____

placement where services were not offered and could not have prevented the necessity of placement, whether this level of effort was reasonable due to the emergency nature of the situation, safety considerations and circumstances of the family.

42 Pa.C.S. § 6332(a).

[5] Similarly, Pennsylvania Rule of Juvenile Court Procedure 1514(A)(5) states:

**A. Required findings.** Prior to entering a dispositional order removing a child from the home, the court shall state on the record in open court the following specific findings:

*   *   *

(5) One of the following:

(a) Reasonable efforts were made prior to the placement of the child to prevent or eliminate the need for removal of the child from the home, if the child has remained in the home pending such disposition; or

(b) If preventive services were not offered due to the necessity for emergency placement, whether such lack of services was reasonable under the circumstances; or

(c) If the court previously determined that reasonable efforts were not made to prevent the initial removal of the

With regard to reasonable efforts at reunification, this Court has stated

> As the Office of Children and Families in the Courts has observed, neither federal nor Pennsylvania law defines "reasonable efforts." Notwithstanding the lack of a legal definition, we discern the following from prior cases. Because the focus of the Juvenile Act is on the dependent child, as opposed to parents, any services for parents must directly promote the best interests of the child. By requiring only 'reasonable efforts' to reunify a family, the statute recognizes that there are practical limitations to such efforts. It is not sufficient for the court to find simply that an action will promote family reunification; the court must also determine whether the action constitutes a **reasonable** effort towards reunification. This Court has stressed that the agency is not expected to do the impossible and is not a guarantor of the success of the efforts to help parents assume their parental duties.

*In the Interest of C.K.*, 165 A.3d 935, 941-42 (Pa. Super. 2017) (internal citations, quotation marks, and footnotes omitted) (emphasis in original).

Here, DHS obtained an Order of Protective Custody ("OPC") shortly after Child's birth. The OPC indicated that DHS did not offer preventative services due to the necessity for emergency placement, and that the lack of services was reasonable under the circumstances. *See* OPC, 12/3/19, at 1-2. In the subsequent order adjudicating Child dependent and placing Child in kinship care, the trial court noted, in part, that DHS "made [r]easonable [e]fforts to prevent or eliminate the need for removal of this child from the home." Order of Adjudication and Disposition, 2/20/20, at 2. Following our review, we

---

child from the home, whether reasonable efforts are under way to make it possible for the child to return home.

Pa.R.J.C.P. 1514(A)(5)(a)-(c).

conclude the record supports the trial court's determination that allowing Child to return to Mother's home would be contrary to Child's welfare.

Mother contends that the trial court abused its discretion when it failed to consider whether DHS made reasonable efforts to prevent the removal of Child from Mother's care. *See* Appellant's Brief at 7. More specifically, Mother argues that DHS failed to establish that placing Child was clearly necessary for her well-being. *See id.* at 8. We disagree.

The trial court explained its determination that Child is dependent as follows:

> In this case, Mother left the Child at the hospital shortly after birth for approximately two weeks. (N.T. 2/20/20 at 6, 11). During this time, there was credible testimony that the medical staff caring for Child had no contact with Mother []. (*Id.* at 11). Most significantly, the single contact Mother had with DHS while Child was hospitalized raised significant concerns regarding Mother's mental health. Specifically, the DHS social worker classified Mother's behavior as "delusional" and stated that Mother appeared to have forgotten she gave birth to Child. (*Id.* at 8-10). During the time prior to the adjudicatory hearing, DHS and CUA were unable to contact Mother. (*Id.* at 10, 21-22). After hearing the totality of the evidence regarding DHS's investigation and the lack of contact with Mother throughout the case, [the trial court] entered its order finding reasonable efforts were made.

Trial Court Opinion, April 14, 2020, at 3.

Mother argues that the trial court should have found that DHS could have used reasonable efforts to avoid placement in kinship care. Mother proffers that, even if placement was necessary, DHS could have arranged alternative remedies to keep the family intact, such as offering services or providing mother-baby placement. Mother's Brief at 8.

- 10 -

We cannot conclude the court erred or abused its discretion by relying on the uncontroverted testimony that Mother's untreated mental health issues and the abandonment of Child necessitated DHS to take emergency protective custody of Child. Miriam Hodge, a DHS social worker, testified that Mother has an extensive history of mental health issues which includes diagnoses of schizophrenia, bipolar disorder, depression and attention deficit hyperactivity disorder. N.T., 2/20/20, at 14. Notably, Hodge testified that, after Child's birth, Mother's "thoughts were scattered, and at some moments, she even forgot she had the baby." *Id.* at 7-8.

Beryl Williams, the CUA case manager, testified that she was unable to contact Mother prior to the adjudicatory hearing. *See id.* at 21-22. The testimony, which the court relied upon, further supports the court's conclusion that none of Mother's proposed alternatives would have been in the best interest of Child.

This Court finds Mother's specific contention, that her lack of contact with Child during her first two weeks of life did not harm Child, troubling. In fact, her lack of contact with Child clearly and convincingly demonstrates evidence of neglect supporting the adjudication of dependency. Moreover, contrary to Mother's assertion, there was no evidence presented that a mother-baby bonding program would have avoided placement even if DHS had been able to establish contact with Mother.

Given the totality of the circumstances, the trial court did not abuse its discretion or commit an error of law in concluding that DHS used reasonable efforts to avoid placing Child.

Accordingly, Mother's argument that DHS failed to exercise reasonable efforts to prevent placement warrants no relief. *See In re R.J.T.*, 9 A.3d at 1190.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/20/20